JOSEPH E. LOFTIN *v.* STATE OF MISSISSIPPI.

**Evidence — Improper Testimony.**

It is reversible error in a trial on the charge of murder to permit testimony to go to the jury showing that between the trial in the magistrate's court and the trial in the Circuit Court two State's witnesses were shot by unknown parties, unless the defendant is shown to have been connected with the shooting.[1]

**Same — New Trial.**

Where testimony which is improperly admitted *may have* materially operated in producing a conviction, a new trial will be awarded.[2]

Joseph E. Loftin was convicted of murder, and appeals.   At the trial in the Circuit Court the State introduced, among other witnesses, Marion Martin and Ambrose Martin, who had appeared as State's witnesses at the preliminary trial before the justice of the peace, and whose evidence was of great importance to the State..

---

**1**

It is error to admit testimony which does not prove or tend to prove the issue.   Railroad Co. *v.* Tyson, 46 Miss. 729.

Evidence of facts not in issue, but so connected with the matter at issue as to form a part thereof, is relevant and admissible.   Stein *v.* Brunswick. Co., 69 Miss. 277.

The test of admissibility of evidence is its relevancy and not conclusiveness.   It is for the jury, not the court, to decide as to its weight.   Everman *v.* Robb, 52 Miss. 653.

**2**

The admission of irrelevant evidence is error, if it be likely to mislead the jury.   Dougherty *v.* Vanderpool, 35 Miss. 165.

A new trial will not be granted for the admission of illegal evidence, where it appears that there is no probability of a different result on another

Both of these witnesses testified that between the time of the trial in the justice's court and that in the Circuit Court they had been shot by unknown parties. The defendant was under arrest at the time and confined in jail thirty or forty miles distant, and is not shown to have been in any way connected with the shooting; neither·was it shown that the shooting was at the instance of his friends. Counsel for defendant objected to the introduction of this testimony, but the court allowed it to go to the jury. The defendant was convicted, and on appeal assigns as error the action of the court in permitting this testimony to go to the jury.

APPEALED from Circuit Court of Lawrence county, A. G. MAYERS, Judge.

Reversed and remanded, March 15, 1886.

*Attorneys for appellant, A. C. McNair, A. H. Longino.*

*Attorneys for appellee, T. M. Miller, Attorney-General.*

Brief of A. C. McNair, A. H. Longino:

\*　\*　\* The court erred in permitting testimony of the shooting of the State's witnesses, Marion Martin and Ambrose Martin, without connecting defendant therewith. Under no circumstances was that testimony admissible unless Loftin had in some way been connected with the shooting.

The evidence on the part of the State fails to show that he was in any manner a party to the shooting or responsible for it. It

---

trial, and where it also appears that justice has been done. McMullen *v.* Mayo, 8 S. & M. 298; Routh *v.* Agricultural Bank, 12 S. & M. 161.

If it is manifest to a reasonable certainty that justice has not been done a new trial will be granted. Taylor *v.* Sorsby, 1 Walk. 97.

When incompetent evidence of great import is deliberately introduced, and it cannot be said with confidence that no other conclusion than that of guilty could have been reached on the legal evidence, the fact that the jury was subsequently instructed to disregard the incompetent testimony will not cure the error, and for this a new trial will be granted. Chism *v.* State, 70 Miss. 742.

A verdict will not be disturbed unless it is manifest from the whole record that it is clearly wrong, or unless misdirection or other apparent error may have produced it. McAlexander *v.* Puryear, 48 Miss. 420; Pfeifer *v.* Chamberlain, 52 Miss. 89.

was in fact admitted by the district attorney that at the time of the shooting of the witnesses appellant was in jail at Hazlehurst, a distance from the scene of the shooting of thirty or forty miles.

Again the evidence of the defendant is positive that he knows nothing of it, and was in no manner responsible therefor. When he was informed of the shooting he repudiated the conduct of the party or parties who did it.

In the case of The State v. Rothschild, 68 Mo. 52, the question was as to the admissibility of evidence similar to that in question. The court held the admission of the evidence to be error, as there was nothing to connect Rothschild with the alleged tampering with the witness, and it says that it will not do to say that the testimony being irrelevant did the defendant no harm, since the court had sanctioned its relevance by admitting it. The effect of the irrelevant testimony was thus just as damaging to all intents and purposes as if it had in truth and fact connected defendant with the alleged attempt to tamper with and remove the witness from the State. * * *

In the case of State v. Jaegers, 66 Mo. 173, the question was the same as in this case and the Rothschild case, and the Missouri court held that it was error to admit the evidence without in some way connecting the defendant with the fact proposed to be proved. * * *

The effect of this illegal evidence was to prejudice the mind of the jury against the defendant and this court cannot say that it may not have had such effect. Then, if such may have been its effect, under the rule announced in Lyne's case, this court will reverse. * * *

In Lyne's Case, 36 Miss. 617, this court uses this language in reference to the improper reception of evidence. " In cases purely circumstantial, it is impossible for the court to determine what influence the testimony may have produced upon the mind of the jury. We deem it a safe rule to leave to the jury disputed questions of fact and, therefore, where evidence has been improperly admitted *which may* have materially operated in producing conviction, even in cases where our own minds might incline to sustain the verdict upon the testimony which was legal, the case will be reversed, that the appropriate tribunal may pronounce upon the real facts in dispute; and only in cases where the illegal testimony *could not have changed* the result will this court refuse to set aside

the verdict and judgment and award a new trial." This case, as the Lyne's case, is one of purely circumstantial evidence on the part of the State, and the same principle will exclude the evidence objected to in this case that did so in the Lyne's case. From the examination of the evidence embodied in the bill of exceptions, the court will readily perceive how potent and effective may have been this illegal evidence on the mind of the jury.

Brief of T. M. Miller, Attorney-General:

\* \* \* The seventh assignment of error having reference to the admission of the testimony of Marion and Ambrose Martin (two important witnesses for the State), that they were shot by some unseen and unknown person, presents the only difficulty in the case. I submit, however, that conceding the testimony to have been illegal, the judgment should not have been reversed on that account. It is not the case of an attempt by the State to prove that the defendant committed a distinct crime from that for which he was being tried. Such testimony would be manifestly prejudicial as well as illegal. Here it was shown that the defendant was forty miles away, in jail, and unlike the case of State v. Rothschild, 68 Mo. 52, mainly relied on by counsel, it was not hinted or pretended by the court or district attorney so far as this record shows, that the defendant had aught to do with it. It appears to have been the relation of episodes in the personal history of the witnesses, and no rational jury directed by the court and bound by their oaths to consider only the evidence for or against the accused can be supposed to have been biased against him on that account.

In the cases cited and in those upon which they were founded and in all kindred cases of reversals for the admission of illegal evidence the natural effect of it was to induce a belief in the defendant's connection with the matter proved; some extravagant abuse of his powers with relation to it by the judge, or else the testimony was calculated to excite prejudice against the accused.

Judge Sherwood, in the Missouri cases, in his glowing style says that: Where verdicts owe their birth to prejudice *rather than to evidence* the court's sanction to such unwarrantable results will be refused.

But I insist that where reasonably viewed the irrelevant, and hence illegal, matter could not in all human probability have induced or contributed to the result and where the verdict rests

upon abundant testimony which cannot fairly be suspected, it should not be disturbed.

I accept the rule as laid down in Lyne's Case, 36 Miss. 617, viz.: A new trial in a criminal case will be granted when illegal evidence has been admitted that might have operated prejudicially in producing the verdict, but when it is certain that the illegal evidence did not tend to procure it, it must not be upset.

" Only where the illegal testimony could not have changed the result will this court refuse to set aside the verdict and judgment."

It will be observed, however, in Lyne's case, that the illegal evidence was emphasized before the jury in three ways:  First, by overruling defendant's objection to it.   Second, by refusing to exclude it on his motion, and third, by the court's refusing to instruct the jury to disregard it.   It was, besides, calculated reasonably to induce belief in defendant's guilt.

I further admit that " Courts will rarely presume that illegal evidence could not have had any effect in producing the verdict." But a judgment of conviction will not be reversed because of the improper admission of such proof if it appear from the whole case that the error did not operate to the prejudice of the accused. Clark *v.* People, 31 Ill. 479; People *v.* Gonzales, 35 N. Y. 8 Tiff. 49.

A judgment will not be reversed on the ground of the admission of impertinent evidence, if harmless.   Stephens *v.* The People, 4 Park. Cr. Rep. 396.

I append to this brief a list of cases, cited, with more or less propriety by the text-books, to support the proposition that a judgment will not be reversed because of the admission of impertinent, irrelevant, or immaterial evidence, or for the exclusion of that which is material and relevant when it appears that no harm was done or the case could not have been strengthened.   *   *   *

I commend to this court the views of the Supreme Court of California in the case of The People *v.* Graham, 21 Cal. 261.   In that case, the victim of an assault, a child six years of age and not possessing the requisite capacity to be a witness, was placed upon the stand, examined, and withdrawn before testifying to anything material.   It was urged that the appearance of the little victim on the stand was calculated to influence the mind of the jury against the defendant, and a new trial was sought for that reason among others.   But the court held there was nothing in the point, and

said: "Unless we can trust to the intelligence and integrity of juries to withstand such influences we must dispense with the use of juries as a part of the machinery for the administration of justice." * * *

Cases alluded to above: Lynes *v.* State, 36 Miss. 617; Stephens *v.* People, 4 Park. Cr. Rep. 396; Bird *v.* State, 14 Ga. 43; Mathis *v.* State, 33 Ga. 24; Wise *v.* State, 2 Kan. 419; Jackson *v.* Scharff, I Oreg. 246; Evans *v.* State, 44 Miss. 762; State *v.* Graham, 21 Col. 261; Waterman Co. Dig., New Trials; Evidence.

OPINION.—CAMPBELL, J., delivered the opinion of the court:

It was error to permit the witnesses Marion Martin and Ambrose Martin to testify to having been shot, and while we would not hesitate to affirm the judgment notwithstanding this error, if able to say confidently it was harmless, not being thus convinced, we must set aside the verdict which may have been partly produced by it.

The evidence is circumstantial, and the conviction rests chiefly on the testimony of the two boys above named, each of whom had been shot, as he testified, and although it was admitted that the attempt on their lives could not have been by the defendant in person, the inference very likely to be drawn was that it was in his interest, and it was well calculated to excite suspicion that the effort was to destroy evidence against the accused, and to create unfavorable presumptions against his innocence.

*Reversed and remanded for a new trial.*