HAMMOND DICKEY *v.* STATE OF MISSISSIPPI.

86 | 525
94 | 106

1. CRIMINAL LAW. *Rape. Evidence.*

In a prosecution for rape it is competent for the state to show:

(a) That prosecutrix complained soon after the outrage, but not the particulars of her complaint;

(b) That prosecutrix was a child slightly over ten years of age;

(c) That defendant, after being arrested for rape, addressed a letter to the physician who had examined prosecutrix, and handed it to a deputy sheriff to be mailed, containing a statement of facts, with an offer to pay the physician if he would swear to the facts as stated in the letter, although the letter never reached the physician, it being a manifest attempt to fabricate evidence; and

(d) That defendant disappeared from his home immediately after the offense was committed, and search was instituted for him, as tending to show flight.

2. SAME. *Particulars of complaint. Harmless error.*

Where, in a prosecution for rape, there was no question of identity or of the commission of the act, but the defense claimed that the intercourse was accomplished with prosecutrix's consent, error in the admission of prosecutrix's complaint to her mother, immediately on her return home after the outrage, in which she stated, "Mr. Dickey [defendant] hurt me," was harmless.

3. SAME. *Verdict on conflicting evidence.*

Where, in a prosecution for rape, there was evidence from which the jury were warranted in finding defendant guilty, a conviction will not be reversed on the ground that the jury should have found defendant not guilty, in view of all the competent evidence in the case.

4. SAME. *Misconduct of jury.*

The facts that a bailiff was present in the jury room for a few minutes, during which nothing was said concerning the case submitted to the jury; that one of the jurors separated from his fellows for a few minutes, to go to a water cooler, in the presence of the court; and that the jury was allowed to occupy the courtroom as a sleeping apartment at night, in custody of two bailiffs, were not prejudicial to defendant.

FROM the circuit court of, first district, Coahoma county.

HON. SAMUEL C. COOK, Judge.

Hammond Dickey, the appellant, a white man, was indicted, tried, and convicted of rape upon Catherine Fortson, a negro girl, and sentenced to the penitentiary for life. The offense was committed and indictment found in Quitman county, but the venue was changed, on defendant's application, and the trial had in Coahoma county, first district. From the conviction and sentence defendant appealed to the supreme court.

On the trial, the prosecutrix, Catherine Fortson, testified that she lived near the defendant, and went to the house of defendant to get some pears, and defendant went with her to the orchard to get the pears, and they both came back to the house, and while she was at the house, talking to the wife of defendant, he left, and after a while she started home through a cotton field, and, while she was going through the cotton field, defendant caught her, jerked her down, and had forcible intercourse with her. Three witnesses testified that when Catherine got home she was bleeding considerably, and said, when asked what was the matter: "Mr. Dickey hurt me." This was objected to by defendant. Defendant testified that the girl went to his house and asked for some pears, and he went with her to the

orchard to get the pears, and while they were in the orchard he had sexual intercourse with her there with her consent, and denied that he went to the cotton field at all, as stated by her. The prosecutrix and her parents testified, over defendant's objection, that she was ten years old. A letter written by defendant to Dr. Henderson, the physician who attended prosecutrix, was introduced in evidence by the state over the defendant's objection. This letter was written by defendant while in jail, and handed to the deputy sheriff to be mailed, it being addressed to Dr. Henderson. The letter contained a statement of facts which defendant requested Dr. Henderson to swear to, and an offer to pay him $200 if he would do so.

Defendant made a motion for a new trial, setting up, among other things, that one of the jurors was separated from the jury during the trial, and that two bailiffs entered the jury room while the jury were deliberating on the case and remained in the room a large part of the time after the jury had heard the evidence and received the instructions of the court. The evidence on the motion showed that one juror had gone a short distance across the courtroom, to a water cooler, to get a drink of water. The judge stated that this was observed by the court, but that the juror immediately returned, and did not talk with, nor was he spoken to by, any one. It was shown that one bailiff entered the jury room for the purpose of speaking to one of the jurors about his son, who was sick, the bailiff stating that he was only in there a few minutes, told the juror that his son was sick, and the juror wrote an order to a physician to go to see his son; that the jury did not discuss the case in his presence, and nothing was said about the case at all by him or by any of the jury while he was in there. It was also shown that another bailiff went into the jury room. This bailiff stated that he was called in there by some of the jurors to get them a broom to sweep up some water that had been spilled on the floor, and that nothing was said by him or any of the jurors in his presence about the case. It was also shown that the jury stayed

in the jury room one night until about eleven o'clock, and then went into the main courtroom and made down their beds and slept in there the remainder of the night. There were a number of books in the room, but none of the jurors read any book, and the case was not discussed at all in the presence of the bailiffs by the jury, nor did the bailiffs discuss the case in the presence of the jury or any of them. ·

*Denton & Leathers,* for appellant.

The appellant is not guilty, and the jury should have so found, in view of all the competent testimony in the case. We know that juries are entrusted with the sole responsibility of passing upon the facts; but in cases of rape, where it is "so easy to accuse and so hard to defend," the verdict of the jury will be scrutinized with care, and a conviction will be reversed unless plainly supported by the evidence, as in the cases of *Monroe* v. *State,* 71 Miss., 196; *Green* v. *State,* 67 Miss., 356; *Hollis* v. *State,* 9 South. Rep., 67; *Harvey* v. *State,* 26 South. Rep., 931; *Tymes* v. *State,* 29 South. Rep., 91.

Three witnesses for the state were permitted to testify, over the objections of appellant, that the prosecutrix not only made complaint of her injury shortly after the alleged assault upon her, but also that she then charged appellant with the wrong; and the case should be reversed on this ground alone. *Anderson* v. *State,* 82 Miss., 785; *Ashford* v. *State,* 81 Miss., 414; Rice on Crim. Ev., sec. 521, and cases there cited; 2 Bishop on Crim. Proc. (3d ed.), sec. 963; 23 Am. & Eng. Ency. Law, 874. That the prosecutrix merely said, "Mr. Dickey hurt me," and did not use the word "rape" or other words equivalent, does not alter the injury done appellant by her statement, because it is clear that she meant that he had raped her. Neither is the case altered by the fact that appellant afterwards admitted that he had sexual intercourse with her, and even that he had hurt her, because he has never admitted the rape; and it is clear that, in her statement to her father and mother, she

was charging him with the rape, and that the jury so understood it.

The court erred in permitting witnesses for the state to testify that, about the time this crime is alleged to have been committed, they heard a noise, which "sounded with a hollering like a child," but they did not know what the noise was or where it came from. *Baker* v. *State,* 82 Miss., 84. It is true that the court afterwards excluded a part of this testimony, but, in accordance with a recent decision of this court, this will not cure the error. It had already had its effect. *Flowers* v. *State,* 85 Miss., 591 (s.c., 37 South. Rep., 814).

The admission in evidence of the letter written by appellant to Dr. Henderson is reversible error. It was not admissible for the purpose of discrediting the testimony of Dr. Henderson, because his name is on the back of the indictment as a witness for the state, and he had not been introduced at that time as a witness for appellant. The case of *Baker* v. *State,* 82 Miss., 84, is exactly in point. The case is not altered by the fact that appellant did afterwards introduce Dr. Henderson as his witness.

The letter was not an attempt to bribe Dr. Henderson, but was an appeal to him to come to court and testify to the facts as appellant believed them to exist; but if the letter did show an attempt to bribe, such attempt constituted a separate and distinct offense, for which appellant might have been indicted and convicted under sec. 1246 of the code; and this furnishes another undeniable ground for reversal of this case. *Dabney* v. *State,* 82 Miss., 252.

The district attorney should not have been permitted to introduce evidence as to the age of the prosecutrix and to attempt to contradict the testimony of appellant's witnesses thereto. The indictment alleges that the prosecutrix was over ten years old at the time of the alleged assault upon her, and her age was therefore immaterial. *Mobley* v. *State,* 46 Miss., 501. The

stress laid upon the extreme youthfulness of the prosecutrix undoubtedly very largely influenced the verdict of the jury.

Proof that there was a general and public search of the surrounding country for appellant could have been made by the state for no other purpose than to show the highly excited and prejudiced state of public feeling against appellant which existed at that time. We admit that it is always proper to show flight of the accused, or any act of his which would tend reasonably to show guilt, but it is clearly inadmissible to establish his guilt by the act of any other person or persons, however large may be their number. *Madden* v. *State,* 65 Miss., 176.

It was error for the bailiffs of the jury to be in the room and converse with jurors, and for outsiders to communicate with them, as shown by the record. Section 729 of the code expressly forbids officers to be in the same room with, or to converse with, the jury. The presence of officers or other persons in the jury room will be presumed to be prejudicial, and is of itself ground for a new trial. In *Hare* v. *State,* 4 How. (Miss.), 187, where an outsider was left in charge of the jury for a short while by the officer, Sharkey, C. J., said: "If the verdict be given under circumstances which might conduce to an improper influence, or the natural tendency of it might be to produce bias or corruption, it cannot then be said to be above suspicion; and if it be not, it must fall short of that perfection which the law requires and which, under a more guarded administration, it is capable of producing. It is not necessary that any attempt should be made to bias the minds of the jurors or that any pernicious influence should be exerted. The door to tampering is to be closed. This is the only security; for if it be left open, it may be predicated with certainty that the evil consequences will fall somewhere."

It has been frequently held elsewhere that the presence of officers and outsiders in a jury room will be presumed to be prejudicial. *People* v. *Knapp,* 42 Mich., 267 (36 Am. St. Rep., 438); *State* v. *Snider,* 20 Kan., 306; *Gandy* v. *State,*

24 Neb., 716, citing *Rickard* v. *State,* 74 Ind., 275; *McLary* v. *State,* 75 Ind., 261; *Cole* v. *Swab,* 4 G. Greeb (Iowa), 32; *State* v. *Cartwright,* 20 W. Va., 32; *State* v. *Robinson,* 20 W. Va., 743; *Slaughter* v. *State,* 24 Tex., 410; *Hoberry* v. *State,* 3 Minn., 181.

This court has recently held that jurors should be absolutely segregated and removed from any probability of prejudicial influence. *Cook* v. *State,* 85 Miss., 738 (s.c., 38 South. Rep., 113).

*J. N. Flowers,* attorney-general, for appellee.

The appellant is a white man, and the girl he is charged with assaulting is a negro, and at the time of the assault she was about ten years old. The accused admits the act, but denies that it was criminally performed. He says it was done by agreement and with her voluntary consent. Hence there is no issue here as to the identity of the criminal nor as to the accomplishment of the act; the only issue is as to whether the act was a crime.

As a circumstance in support of the state's contention that the act was a crime, it was competent to show the age, the extreme youthfulness, of the girl; although, as held in *Mobley* v. *State,* 46 Miss., 501, an averment that the prosecutrix is over ten years of age need not be proved. While it is not an element of the crime, it is a circumstance of some value in a case like the one at bar. A girl of this tender age would not be so ready or likely to consent to such an act as one of maturer years accustomed to such indulgences. This is common knowledge; in fact, the defendant's admission goes far toward providing the crime when the age of the prosecutrix is taken into consideration. The results show that he was probably the first man who ever committed such an act with her, and it is unreasonable that her consent could have been obtained in such a matter-of-course way. And the fact that Mrs. Dickey observed nothing unusual about her husband or the girl is strong corroboration of the girl's story that the act was committed in the cotton

field, and not in the orchard.    The copious flow of blood is not denied.    .This inexperienced girl was necessarily frightened when she saw it, and she would not have exposed these signs to Mrs. Dickey, nor would she or the accused have taken the risk of having her pass through the yard where Mrs. Dickey could see her.    It is true Mrs. Dickey says she only saw her from her waist up, yet it does not appear that the accused and the girl knew that Mrs. Dickey would be in such a position to see only the upper half of the girl's body as she passed through the yard.    On principle, this testimony is as clearly competent as would be proof that one is an imbecile, or frail, or an invalid.

Keeping in view the one issue in this case, we conclude that there was no error in permitting proof that the girl complained to her parents that "Mr. Dickey hurt me."    This violates the rule only in naming or identifying the party accused.    The statements contain none of the details, except the name of the accused.    In this far it violates the well-established rule last announced by this court in *Anderson* v. *State,* 82 Miss., 784. But this is harmless error when the issue before the jury is not whether the accused is the man who committed the act, but whether the act of the accused was criminal.    He admits that he is the guilty party if any one is guilty.    He admits what the girl told her parents.    The state proved no other details reported to her parents by the girl.    The accused even admits that he hurt her, because he effected his purpose with great difficulty, and after the act was accomplished there was considerable blood.    Even if the state had proved that the girl complained that she had been raped by Mr. Dickey, there would be no ground for reversal under the showing made by this record, because it would have been proper to show that she complained of an outrage, and proof that she named the person who committed the act would not harm him, when he admits that he is the man, but denies the criminality of the act.

Still keeping the one issue in view, it is impossible to see how the letter to Dr. Henderson was incompetent. The rule is general that an attempt of one accused of crime to suborn or to bribe witnesses in his behalf is admissible against him as indicating a consciousness of guilt and knowledge on his part that the truth of the case is not sufficient for his defense. As the authorities agree, such testimony is not conclusive, because the accused may be unduly alarmed, or he may not know the legal effect of the truth, or he may be desperate and doing senseless and damaging acts. But such testimony is always admissible.

It is true our court seemed to disregard the rule in *Baker* v. *State,* 82 Miss., 84; but it is evident it was not meant to disregard it nor to annul it in this state. The rule is too well settled to be overturned without a word of explanation. Some ceremony should attend its last appearance. The court in the Baker case evidently overlooked the rule for one moment, the point not having been pressed in that case. It will be noted that in the brief for the state in that case the position of counsel for appellant on this point was not questioned.

The Baker case is thought by Wigmore to be unsound on this proposition. 1 Wigmore on Evidence, sec. 278, note 4. It is certainly at variance with the general rule, as appears from the authorities cited by Wigmore under said sec. 278.

Such testimony is admissible upon the same principle that justifies proof of flight. Such acts, expressions, and conduct indicate a consciousness of guilt. To the same class belong acts of the accused in attempting to induce a witness to abscond.

"Evidence that defendant had offered money to induce a person to testify that he had struck the fatal blow in self-defense is admissible, as an admission and as evidence of an attempt to influence a witness." *Conway* v. *State,* 118 Ind., 482 (21 N. E., 285).

A letter in the handwriting of the defendant addressed to a witness in the cause, seeking to impress him with defendant's

version of the facts and urging him to help him and to speak to the jurymen, and one addressed to another person, requesting him to labor with the jurymen and to promise them pay, are competent evidence. In that case the court said: "We can hardly think the objection to this evidence was made seriously." *People* v. *Marion,* 29 Mich., 31, 39.

In *State* v. *Case,* 53 Am. St. Rep., 471, the North Carolina court held that an offer to bribe a juror could be shown in evidence, although that itself was a distinct offense. The court cited Roscoe, who says: "The motion that it is in itself an objection to the admission of evidence that it discloses other offenses, especially where they are the subject of indictment, is now exploded." *Dabney* v. *State,* 82 Miss., 252, is no exception to or infringement upon the rule.

In *Williams* v. *State,* 4 S. W., 64, the Texas court held that evidence might properly be offered to show an effort on the part of the accused to obtain false testimony.

In *State* v. *Barron,* 37 Vt., 57, the court held that the state might show that the defendant had been instrumental in procuring the absence of witnesses.

No authority supports the holding of this court in *Baker* v. *State, supra.* Attempts to fabricate testimony, to suppress testimony, to induce false swearing, to bribe jurors, to escape—all such attempts may be shown as original testimony against the accused. They might be shown also when the person whom the accused had tried to influence is placed on the stand. But this is not the only occasion on which it may be shown, nor is it the sole or principal value of such evidence that it impeaches a witness. Counsel for appellant say: "We submit that it is always proper to show flight of the accused, or any act of his which would tend reasonably to show guilt."

The purpose of the testimony as to the extensive search made for the accused was to show his flight and his concealment. It was competent for this purpose.

Cox, J., delivered the opinion of the court.

Appellant, a white man, was convicted of rape. The victim was a little negro girl. According to her father's testimony, she was ten years and about nine months old when the offense was committed; but, from certain circumstances testified to in the case, she may have been as much as twelve or thirteen. Every element of the crime is established fully—indeed, is confessed—except the want of consent of the prosecutrix. Upon this issue the only direct evidence is the testimony of the prosecutrix and the accused.

It is insisted that the case should be reversed because testimony was admitted to the effect that the little girl (as she is styled throughout the record by both attorneys and witnesses), in her complaint to her mother immediately upon her return home after the outrage upon her, said: "Mr. Dickey hurt me." It is competent in cases of this kind to permit the introduction of testimony to show that the prosecutrix made complaint soon after the wrong claimed to have been done her, but it is not competent to permit the particulars of her complaint to be shown to the jury, and especially is it error to permit the jury to be informed as to whom she charged with the crime. But in this case, looking back upon the trial as a completed whole and considering everything in it, we can see that the defendant was in no wise prejudiced by the erroneous admission of the testimony complained of. There is no question of identity here, nor of the commission of the act which the state denounces in this case as rape, but which the defendant, in effect, maintains was, in law, the innocent gratification of a natural appetite. Everything charged against the defendant by the child in her statement to her mother, and more, was admitted by defendant on the witness stand; nor can it be claimed that he was forced by the admission of the testimony in question to have waived his privilege and become a witness in his own behalf. The testimony of the prosecutrix before the jury made this imperatively necessary.

·It was not error to allow the introduction of evidence to show the age of the child. While it is true that there is no legal presumption that a female child slightly beyond ten years of. age cannot and will not consent to her defilement, there is a strong presumption of fact, known to all men, that girls of such tender age will not so readily yield themselves to the embrace of the lustful and brutish as those who are more mature; and this presumption the state is fairly entitled to have the benefit of in all prosecutions for rape of children of tender years.

It was not error to admit the letter written by the defendant and addressed to Dr. Henderson, although it was never delivered to him. This letter is manifestly an attempt to fabricate evidence and suborn perjury. It was clearly admissible. Says a recent great writer on evidence: "It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other frauds in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one, and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not apply itself necessarily to any specific fact in the cause, but operates indefinitely, though strongly, against the whole mass of alleged facts constituting his cause." Wigmore on Evidence, sec. 278. After giving examples of the matters within the principle, the author proceeds: "As the general principle applies in common to all these forms of fraud, it is not necessary, nor is it usually possible, to discriminate the precedents that apply it in one or another form. Roughly classifying them, they admit all forms of personal falsification by the party in the course of the litigation—the fabrication or manufacture of evidence by forgery, bribery, subornation, and the like; the suppression of evidence by intimidation, eloignment, or concealment of witnesses or material objects, or by the destruction or spoliation of docu-

ments or other material objects." The letter was within the principle above announced, and was competent evidence for the state.

It was proper to permit the state to show the defendant's disappearance from his home immediately after the commission of the crime, and the search that was instituted for him, as tending to show flight.

It is clear that the defendant was not prejudiced by the presence of the bailiffs in the jury room, by the separation of one of the jurors from his fellows for a few moments while under the observation of the trial judge, nor by the fact that the jury were allowed to occupy the courtroom as a sleeping apartment at night.

There was no error in refusing instructions for the defendant, and no error in the action of the court in modifying certain instructions for defendant. The law of the case was fully announced, and with great liberality towards the defendant; and the jury could not possibly have been misled as to the law, to the prejudice of defendant.

We are asked to reverse this case upon the ground that appellant is not guilty, and the jury should have so found, in view of all the competent evidence in the case. We are aware that convictions of this detestable crime, so easy to charge and so hard to defend, should always be scrutinized with caution. But while this is true, we will not be astute to discover pretexts for reversal where there was competent evidence before the jury, which, if believed, would be sufficient to uphold a verdict of guilty. While we desire to protect the citizen accused of crime from unwarranted conviction, we are not less concerned to protect from violence and outrage the womanhood of the state. The safety of all women, the keeping free from pollution of the virginal purity of our daughters, and the preservation of the sanctity of our homes, depend upon the certainty and promptness with which crimes of this character shall be visited with condign punishment, it matters not how humble and friendless

the victim nor what her race or color. The issue of fact in this case was sharp and clear. If the jury, having before them the prosecutrix and the accused, seeing and hearing them, and noting their appearance and demeanor, preferred to believe the little, ignorant negro girl, rather than a white man who by his own confession was guilty of an execrable moral offense, shocking to an enlightened conscience, which ought to be denounced as a crime by the law, without regard to the consent of the victim, we will not say that they were not warranted in so doing. Their verdict received the sanction of a just and enlightened trial judge, and will not be disturbed by us.

We take this occasion to express our opinion concerning the wisdom and justice of the conclusive presumption of law that a female child over the age of ten years has sufficient intelligence and discretion to consent to the surrender of her virtue and the defilement of her person. Every child under fourteen is presumed by the law to be *incapax doli*—that is, mentally incapable of entertaining a criminal intent—because presumed not to have developed sufficient intelligence and moral perception to distinguish between right and wrong and to comprehend the consequences of his act. And hence no child under fourteen can be punished for any crime except upon proof of exceptional intelligence and maturity. And yet, while this is true and while it is further true that a female child less than ten years old, by so much as a day, is conclusively presumed incapable of consenting to sexual commerce, a female child over ten, by so much as a day, is conclusively presumed capable of consenting to the sacrifice of her virginity, her social undoing, and her moral ruin. This, we suppose, by analogy, is because she is presumed to have sufficient intelligence and moral discrimination to distinguish between right and wrong and to comprehend the ruinous consequences of the act. This presumption is inconsistent with the presumption of incapacity to commit crime, and in irreconcilable conflict with the truth, and is an insult to

our intelligence.    We all know that the overwhelming majority
of the girls of this state under fourteen years of age, in their
ignorance and innocence, do not and cannot have any adequate
understanding of· sexual commerce, nor any comprehension of
the ruinous consequences of a lapse from virtue.    The legal
presumption which declares that every female over ten years
of age is fully capable of giving intelligent assent to her own
ruin, and which, therefore, makes her fair play for any lecher-
ous scoundrel who can impose. upon her innocence and credulity,
is a reproach to the law, a disgrace to a christian state, and a
blot upon the ·civilization of the age.    It is a relic of barbar-
ism which should be abolished.    The girls of the state under
fourteen should be protected by a legal presumption that they
are incapable of consenting to their own shame.    This pre-
sumption might be made either *prima facie* or conclusive.    If
*prima facie,* it might be allowed to be rebutted upon proof of
exceptional intelligence and maturity.    If conclusive, the pen-
alty might, in the discretion of the trial court, be made either
death, imprisonment for life, or imprisonment for a term.    In
this way, without injustice to any one, our daughters could be
protected by the law until such time as they could reasonably
be presumed to have sufficient discretion to protect themselves
against the machinations of the seducer.

*Affirmed.*