MATTOX *v.* STATE

No. 42085 February 26, 1962 137 So. 2d 920

404

*W. L. Sims,* Columbus; *Barnett, Montgomery, Mc-Clintock & Cunningham,* Jackson, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

408

ETHRIDGE, J.

Appellant, Jon Mattox, was convicted in the Circuit Court of Lowndes County, Mississippi, of the murder of Mrs. Gene Cain Tate. This is the second appeal of this case. On the first Mattox's conviction was re-

versed because of the erroneous admission of certain testimony. Mattox v. State, 240 Miss. 544, 128 So. 2d 368 (1961). On the second trial appellant was found guilty by the jury and was sentenced to life imprisonment. The principal issues pertain to sufficiency of the evidence to support the conviction; the admission in evidence of testimony that accused attempted to procure the death of a material witness against him; the admission in evidence of a blue checked shirt allegedly worn by defendant and related evidence; the overruling of defendant's motion to produce a written statement given the state's attorneys by a state's witness; and the propriety of certain cross-examination of defendant. We hold that the evidence amply warranted the jury in finding the defendant guilty as charged, and there were no reversible errors. Hence the judgment of the circuit court is affirmed.

At the time of the homicide Jon Mattox was nineteen years of age, a college student residing with his mother and father in the City of Columbus. Their next door neighbors were Irwin Tate and his wife, the deceased, Mrs. Gene Cain Tate, and their four young children. The carport of the Mattox residence and the garage of the Tate residence were within six feet of each other. Mrs. Tate was murdered sometime between 10:30 and 10:55 Sunday morning, January 31, 1960. Mr. Tate returned from Sunday School with three of his children (the other was with her grandmother) around 10:55 a. m. They found the mother's dead body lying in the garage with a coat hanger and a black scarf twisted around her neck. She was strangled to death.

Mr. Tate testified that relations between him and his wife had been strained for several months up until about the early Fall of 1959, because of appellant's manifest interest in his wife; that appellant was constantly staring at her, following her in his car at night when she would leave and returning to his home in his car

shortly after her return; that on one occasion appellant followed them in his car when he and his wife went to a drive-in movie. However, a few weeks before the homicide everything appeared to be all right between them, but his wife was afraid to stay at home with only the children.

██ █ A shirt belonging to defendant was introduced in evidence. The jury was justified in finding that it was worn by him on the morning of the homicide. A laboratory expert from the F. B. I. testified that he found on the blouse which Mrs. Tate was wearing at the time of her murder seven blue cotton fibers, and on her pedal pushers he found a single blue cotton fiber. Examining these fibers microscopically, he was of the opinion that the fibers on her clothing "either originated from this shirt or from a source with similar blue cotton fibers"; that they matched in every microscopic character the fibers found in defendant's shirt. The number of fibers on the deceased's clothing indicated contact between the two garments. A blue bathrobe belonging to one of the Tate boys was offered in evidence. The laboratory expert stated that the fibers on Mrs. Tate's clothing were slightly dissimilar in color to those of the robe, but the dissimilarity was not sufficiently great to entirely eliminate the latter as a possible source. However, he said there were no dissimilarities between the fibers on Mrs. Tate's garments and those from defendant's shirt. A service station operator saw defendant between 10 and 11 a. m. on that Sunday. He said that defendant was wearing "a pretty blue checked shirt", which was either the identical shirt in evidence or one of the same color and type. Several days after the homicide, the Columbus Chief of Police requested defendant's father to turn over to him the clothing which defendant was wearing on the Sunday morning Mrs. Tate was killed. He delivered to the Chief a package containing the shirt in evidence. Defendant denied that he had worn this shirt that morn-

ing. The testimony of the service station operator, the Chief of Police, and the F. B. I. laboratory expert, and the defendant's denials presented issues for the jury as to whether defendant wore this shirt on the morning of the homicide, and whether the fibers on Mrs. Tate's clothing came from this shirt belonging to defendant.

Detective Louis Harper talked with appellant after his indictment. He asked Mattox why the finger of suspicion had been pointed at him, to which Mattox replied, ''Well, I am not the only one that could have committed this crime.'' Harper observed that, if that were true, he would like defendant to tell him of the others, whereupon ''Jon jumped up and says, 'Well, I will tell you why, because I was there.' And when he said that he immediately stopped and I said, 'Were you in the garage, Jon?' and he said, 'I was there,' and then shut up.'' Harper stated that appellant denied killing Mrs. Tate. However, his testimony placed appellant in the immediate vicinity of the crime.

 █ Miss Sarah Grayson testified that she became a friend of appellant as a fellow student at Mississippi State University. She related at length their various conversations, and told of a picnic on November 4, 1959, when she said that appellant told her of a love affair which he was having with a married woman in Columbus, who was his neighbor and the mother of four children; that appellant said she stopped the affair because of her love for her family; that appellant commented on how easy it would be to kill someone with a scarf similar to the witness'. Several days before the homicide, she said defendant told her that he had figured out how to commit the perfect crime, by using a coat hanger, which would not leave finger prints. After the homicide appellant was visibly upset in Miss Grayson's presence. She advised the authorities both because of her fears of appellant and because she thought it was her duty.

She was vigorously cross-examined. Her testimony was clear, consistent and reasonable, and the jury had the right to accept it, as it apparently did.

After Miss Grayson's cross-examination by defense counsel, the latter made a motion that the state be required to produce a written statement which she had given the district attorney in his investigation of the case. We do not think the trial court abused its discretion in overruling that motion. The applicable principles are fully discussed in Bellew v. State, 238 Miss. 734, 106 So. 2d 146 (1958). The motion was without merit. Moreover there was no showing that the written statement was inconsistent with the witness' testimony in the trial. And, on the motion for a new trial defendant did not offer the statement or show any material inconsistency, and therefore did not properly preserve the point, even if it were of merit.

 █ Defendant was in the Lauderdale County jail pending his appeal to this Court from his first conviction. Also incarcerated there for several weeks were two brothers, Dan and Fred Wilkerson, who had been convicted of armed robbery. They both testified that, although defendant never said he killed Mrs. Tate, he did say that he loved her and if he could not have her, no one else could; that Mattox asked them to kill Miss Sarah Grayson who "was an eyewitness against him." Fred Wilkerson said that defendant also stated that he had asked Mrs. Tate to run away with him, but she refused because she loved her children and husband more than she did him; that defendant offered to pay him and his brother $1,500 to kill Miss Grayson when she came home to Mississippi at Christmas, from a university on the west coast; that it was arranged that defendant would mail them a picture of her for identification, and that he received through the mail, enclosed in a Christmas card addressed to him at his mother's residence, a picture of Miss Grayson. The state introduced

in evidence a piece of paper with the written address of Sarah Grayson in Berkeley, California, which Fred said Mattox handed to him before Fred left the Lauderdale County jail; and also introduced in evidence an envelop addressed to Fred Wilkerson at his mother's residence, containing a Christmas card and a picture of Miss Grayson. A deputy sheriff testified that he was present when Fred Wilkerson's mother brought Fred the sealed envelop containing the card and picture. Appellant admitted that the piece of paper with Miss Grayson's address and the address on the Christmas envelop were in his own handwriting, but he said the Wilkersons must have stolen these items when they left the Lauderdale County jail. Witnesses for defendant testified that the Wilkersons' reputation for veracity was bad. Whether their testimony was true or not was an issue for the jury. The state offered rather strong circumstantial, corroborative support for their accounts.

The question is whether this evidence by the Wilkersons of attempts by the accused to procure the death of one of the material witnesses against him, Miss Sarah Grayson, was admissible in evidence. The great weight of authority holds that it is. Generally speaking, all evidence introduced in a criminal prosecution must be relevant to the guilt or innocence of the accused, but that rule is not violated by the admission of evidence that accused attempted to suppress evidence against himself. ██ █ This testimony of the Wilkersons, with the accompanying documentary evidence, was probative value as an incriminating circumstance inconsistent with appellant's innocence; and as tending to show a consciousness of guilt and that his cause lacked honesty and truth. 22 C. J. S., Criminal Law, Sec. 33; People v. Fiorito, 413 Ill. 123, 108 N. E. 2d 455, 460 (1952); Maddox v. State, 163 Tex. Cr. 5, 288 S. W. 2d 780 (1956); Sapp v. State, 87 Tex. Cr. 606, 223 S. W. 459, 465 (1919). These matters are admissible as part of the state's case

in chief. To the same effect are 20 Am. Jur., Evidence, Sec. 289; Anno., 62 A. L. R. 136 (1929); 1 Anderson, Wharton's Criminal Evidence, (12th Ed. 1955), Sec. 207. The evidence here, tending to show an attempt by Mattox to procure the murder of a material witness against him pending appeal from his first conviction and prior to the second trial, was therefore admissible in evidence, for evaluation by the jury.

Dickey v. State, 86 Miss. 525, 38 So. 776 (1905), analyzed and recognized the admissibility of such evidence. Dickey was convicted of rape. A letter written by him to the doctor who attended the prosecutrix contained a statement of facts which defendant requested the doctor to swear to, and an offer to pay him $200 for doing it. The letter was written by defendant while in jail and addressed but never delivered to the doctor. The court observed that it was manifestly an attempt to fabricate evidence and suborn perjury, and was clearly admissible, as an admission. The opinion approved the following quotation from Wigmore on Evidence, Sec. 278: "It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other frauds in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one, and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not apply itself necessarily to any specific fact in the cause, but operates indefinitely, though strongly, against the whole mass of alleged facts constituting his cause."

In Payne v. State, 204 Miss. 455, 37 So. 2d 743 (1948), defendant was convicted of grand larceny, but on appeal the conviction was reversed because of the trial court's refusal to permit certain surrebuttal testimony.

However, on the instant question testimony by a witness for the state in rebuttal that defendant approached him before the trial and asked him to testify to an alibi was held to be admissible. Apparently the admissibility of this evidence was on the basis both of an admission against interest and an impeachment of defendant. 3 Wigmore on Evidence (3d Ed., 1940), Sec. 956 (impeachment), 2 Wigmore, Ibid., Secs. 277, 278 (admission).

Baker v. State, 82 Miss. 84, 33 So. 716 (1903), apparently considered such evidence admissible only on impeachment, and, as previously shown, that limitation was unsound. However, *Baker* was necessarily modified at a later date in Dickey v. State, *supra.* See 2 Wigmore, Ibid., p. 124.

In Interstate Co. v. Garnett, 154 Miss. 325, 355, 122 So. 373 (1929), plaintiff obtained a judgment in an action for slander. Over defendant's objection, a witness for plaintiff was permitted to testify that, after the filing of the suit, he had a conversation with one of the defendants, who endeavored to hire him to make an affidavit that he did not hear defendant say anything to plaintiff. This was held to be admissible, because an attempt to suborn perjury is evidence that the cause of the party by whom such an attempt was made was unjust or at least weak, and in the nature of an admission. See also Schwartz v. State, 194 Miss. 315, 325, 12 So. 2d 157 (1945); Loftin v. State, 1 Miss. Dec. 105 (1886).

Jones v. State, 230 Miss. 887, 94 So. 2d 235 (1957), is inconsistent with the general rule. Defendant was convicted for the unlawful possession of intoxicating liquor. It was held to be error to permit a deputy sheriff to testify that defendant offered to bribe him and the sheriff "and make us all some money;" that this was an entirely different offense. In *Jones,* the state failed to prove venue, and the conviction was reversed. However, the decision that evidence of the offer to bribe

was inadmissible was incorrect, and that particular holding in *Jones* is overruled.

In short, we hold that the testimony by the Wilkersons of attempts by accused to procure the death of Miss Sarah Grayson, a material witness against him, was admissible in evidence, as being in the nature of an implied admission. Dickey v. State, *supra;* Interstate Company v. Garnett, *supra;* 2 Wigmore on Evidence (3d Ed., 1940), Secs. 273, 277, 278. Payne v. State, *supra*.

Defendant denied any love affair with Mrs. Tate, and denied the conversations with Miss Grayson and the other principal portions of the state's evidence. He described several trips he made that Sunday morning, but by his own testimony placed himself in the near vicinity of the homicide at the time it was committed, when he stated that he returned to his house at "very near 10:35" that morning. Detective Harper's testimony also reflected an admission by defendant that he was at least close by the scene at the time when the crime must have been committed. The record is lengthy, but the foregoing is an outline of the evidence upon which the conviction was based.

 █ In summary, the state made a strong circumstantial evidence case. The issues were submitted on proper instructions to the jury, which was amply warranted in finding the defendant guilty. There was no error in denying the requested peremptory instruction, and the conviction is supported by substantial evidence. The jury was justified in finding that Mattox had the motive, the intent, a design, plan, and method for committing the crime; that he was at the scene of the crime at the time it was committed, and had the opportunity to commit it; that Mrs. Tate was murdered in accord with defendant's threats, method, and plan; and that defendant was guilty. █ The *Weathersby* rule has no application. Weathersby v. State, 165 Miss. 207, 147

So. 481 (1933). Defendant does not claim to be an eyewitness; and his version is substantially contradicted in material particulars by credible witnesses for the state and by physical facts.

Appellant finally assigns as error several questions directed to him on cross-examination by the state's attorney. To only one of them was an objection made, which was overruled. The objection probably should have been sustained, but thereafter defendant proceeded to explain away any unfavorable inference from the question. No objections were made to the other questions; no motion for mistrial was made, and, from careful consideration of the entire record, we are convinced that those isolated questions in the cross-examination were not of such a nature as to be reversible error.

The case was well tried by the learned circuit judge, and by counsel for the state and defendant. Appellant received a fair and impartial trial. Although the circumstances reflect a pathetic tragedy affecting both families, we conclude that it is our duty to affirm the verdict of the jury and the judgment based on it.

Affirmed.

All Justices concur.

## ON SUGGESTION OF ERROR

KYLE, J.

Appellant's suggestion of error contends again that the trial court erred in refusing to require the State to produce a written statement made by Miss Sarah Grayson, a witness for the State, which she gave to the district attorney in his investigation of the case. It is further asserted that this action violated appellant's constitutional rights under the due process clauses of the Federal and State Constitutions, (U. S. Const., 14th Amend., Miss. Const., Sec. 14), and to a fair trial

with right to confront the witnesses against him (U. S. Const., 6th Amend., Miss. Const., Sec. 26).

Appellant received a fair and impartial trial. Mattox v. State, 137 So. 2d 920 (Miss. 1962). The refusal of the trial court to order production of the statement given by the witness Grayson to the district attorney in his investigation was not error. See Miss. Code 1942, Rec., Sec. 1659. The request for production was made after her cross-examination. Her testimony was consistent. Appellant asserts that on two pages of the transcript of her testimony there is a contradiction by her as to what appellant told her at the picnic on November 4. We have carefully examined again this witness' testimony and find that there is no contradiction in it in that respect. Appellant does not claim other contradictory statements by this witness. Hence as a matter of fact the record wholly refutes appellant's contention.

 The granting or refusal of an accused's request for the production or inspection of a writing in the prosecution's possession, allegedly contradicting the testimony of its witness, lies in the sound discretion of the trial court, which is invested with a broad judicial discretion. 23 C. J. S., Criminal Law, Sec. 1036(1); 17 Am. Jur., Discovery and Inspection, Sec. 32; Anno., 156 A. L. R. 345, 348 (1945). It must be shown that the statement is at variance with the writer's testimony, otherwise it is not material or relevant. The accused's request cannot be a mere fishing expedition. 2 Anderson's Wharton Criminal Evidence (12th Ed., 1955), Sec. 672; Eaton v. State, 163 Miss. 130, 143-145, 140 So. 729 (1932).

 Refusal of an accused's request for production of such a writing may be based upon the failure to lay a proper foundation by taking the necessary preliminary steps and by showing that the statement is at variance with the writer's testimony. Anno., 156 A. L. R. at

350. Since there were no material contradictions in Grayson's testimony, it was the duty of appellant's counsel to lay a proper foundation in some other way for inspection of the statement. This may be done by submitting the statement to the trial court for an inspection by the presiding judge as to whether it reveals any contradictory matter. Appellant's counsel did not do this, and laid no foundation for otherwise requiring production of the statement. The district attorney offered to make the statement available to defendant, if defense counsel would introduce it in evidence. This offer was declined. The trial court took the motion for production under advisement overnight, and, after consideration, overruled it.

In short, the trial court, which has a broad discretion in such matters, certainly cannot be said to have abused his discretion in overruling appellant's motion to produce under these circumstances. The cross-examination of Grayson reflected no contradictions in her testimony. Appellant did not ask the presiding judge to inspect the statement and to determine whether it was material and relevant as containing contradictory statements, as he could have done. Hence there was no foundation laid by appellant which would warrant the trial court's ordering the State to produce the prior statement of the witness. Moreover, in the interrogation of Miss Grayson, neither the State's counsel nor she used the statement to refresh their memories or in any other respect, so far as the record reflects. The brief, incidental reference by the witness on direct examination to the statement was simply part of her narrative as to how and why she decided to advise the police officers of her knowledge of appellant's involvement. The foregoing principles are in accord with the great weight of authority and with the practice in this state, as indicated by Eaton v. State, and the discussion in Bellew v. State, 238 Miss. 734, 752-756, 106 So. 2d 146 (1958), app. dis-

missed, 360 U. S. 473, 361 U. S. 858. Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925), is not in point and distinguishable. There the production of a dying declaration of a murdered man, transcribed by a stenographer, was required to be produced, where the district attorney testified for the State in detail about its contents. Hence for the reasons stated in our original opinion and herein, we do not think the trial court erred in overruling appellant's motion to produce the written statement given by the witness to the state's attorneys, which motion was made after the cross-examination of the witness.

██ ██ It is therefore apparent that there was no denial to appellant of any of the stated constitutional rights, as asserted in appellant's brief on suggestion of error. Appellant's counsel fully and vigorously cross-examined this witness, as they did all of the other witnesses for the State. They made no showing which would require the trial judge to direct production of this statement in this instance. There is no merit in any of the contentions on suggestion of error, so it is overruled.

Suggestion of error overruled.

All Justices concur.