447 So.2d 645 (1984)
Rexie COLLINS
v.
STATE of Mississippi.
No. 54746.
Supreme Court of Mississippi.
March 21, 1984.
Stephen P. Livingston, Robert T. Cornelius, New Albany, for appellant.
Bill Allain, Atty. Gen. by Walter L. Turner, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:

I.
The defendant, Rexie Collins, was tried for the murder of Eloise McAllister Judon in the Circuit Court of Union County, Circuit Judge W.W. Brown presiding. The jury found the defendant guilty, and he was sentenced to life in the Mississippi Department of Corrections.
The defendant brings this appeal arguing that the court erred:
(1) In allowing certain pictures to be introduced into evidence;
(2) In refusing to grant a circumstantial evidence instruction; and
(3) In refusing a new trial on the ground of state's non-disclosure prior to trial of two witnesses' written statements, which were contradictory to the witnesses' testimony at trial.
We affirm.

II.
On June 15, 1982, the badly decomposed body of Eloise McAllister Judon was found in a rural area of Union County, near Bratton Road, a road known as a "lovers' lane". The body was clothed in blue jeans and a light pink blouse, and barefooted. The cause of death was confirmed by pathologist *646 Michael Todd to be multiple wounds to the chest area.
Bubba Johnson, who lived about 200 yards from where the body was found, and an acquaintance of the decedent Judon, told the Sheriff's Department that the decedent and defendant Collins had frequently used Bratton Road as a route to a fishing spot. Johnson also told the officers that the decedent and Collins were having a relationship, but recently decedent had been going with another man named Mac Bean.
Collins admitted having a close relationship with the decedent, but stated that he had not seen her during the two weeks prior to the discovery of her body.
However, two persons, William Ivy and Michael Ivy, saw Collins with the decedent on Sunday, June 13, two days before her body was found. William Ivy saw the couple around 6:00 p.m. that Sunday on Bratton Road. Michael Ivy saw them leave a local pool hall in New Albany around 10:45 p.m. Sunday night. At that time the decedent was wearing blue jeans and a pink or maroon halter top.
Further, a man named George Smith, while walking along Bratton Road between 11:00 and 11:30 p.m. on Sunday night, saw Collins and decedent on Bratton Road. He noticed that the decedent was walking barefoot along side Collins' car, as Collins drove. The car stopped and Collins got out. He threatened the decedent and then hit her an estimated five or six times in the chest. The hitting was consistent with that of a stabbing motion. Smith was unable to determine if Collins had anything in his hand. After the fight, Smith lost sight of decedent and saw Collins walk around to his car trunk. Smith then left. Decedent's body was found at the location where Smith saw the fight. Testimony that prior threats were made toward decedent by Collins was given by decedent's daughter, Aretha McAllister, and a mutual acquaintance, Shirley Dixon.
Pathologist Michael Todd testified that the amount of decomposition to Ms. Judon's body was consistent with death having occurred late Sunday, June 13 or early Monday, June 14, 1982.

III A.
Was it error to allow the jury to see pictures of the decomposed body of Eloise McAllister Judon?
This Court has addressed the gruesome photograph issue many times and has held that the admission of photographs is within the sound discretion of the trial judge and will not be reversible error unless he abuses that discretion. Mallette v. State, 349 So.2d 546 (Miss. 1977). Also, the fact that pictures of a homicide victim might arouse the emotions of the jurors does not of itself render them incompetent in evidence provided they serve a legitimate evidentiary purpose. Shearer v. State, 423 So.2d 824 (Miss. 1982); Butler v. State, 320 So.2d 786 (Miss. 1975).
In West v. State, 218 Miss. 397, 67 So.2d 366 (1953), this Court stated:
(I)f photographs which describe the gruesome aspect of a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be introduced in evidence. (Id. 218 Miss. at 408, 67 So.2d at 370).
The pictures shown to the jury in this case served two legitimate evidentiary purposes. First, the pictures corroborated testimony as to what the victim was wearing when last seen. Second, the amount of decomposition placed the time of death at a time consistent with the eyewitness testimony of George Smith. No error was committed by admitting these pictures into evidence.

III B.
Next, was it error to refuse defendant's circumstantial evidence instruction?
Instruction D-12 offered by the defendant was essentially a circumstantial evidence instruction. Where a conviction is based upon eyewitness testimony, the refusal *647 of such instructions is proper. King v. State, 315 So.2d 925 (Miss. 1975); Irvin v. State, 258 So.2d 241 (Miss. 1972), Gilleylen v. State, 255 So.2d 661 (Miss. 1971). Therefore, no error was committed by refusing such instruction here.

III C.
Lastly, was it error to overrule defendant's motion for a new trial on the basis that the state did not disclose the written statements of Michael Ivy and George Smith prior to trial?
Discovery requests had been made by defense counsel for any and all evidence exculpatory to defendant pursuant to Uniform Criminal Rule 4.06, which provides in part that:
Upon request of the defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness's testimony, the statements shall be supplied to defense counsel prior to cross-examination.
Prior to trial the prosecution disclosed to defense counsel the "names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial." After trial of Collins, defense counsel came into possession of written statements made by prosecution witnesses Ivy and Smith, the existence of which was unknown by counsel prior to trial.
Defendant argues to this Court that the prosecution had a duty to disclose the written statements of Ivy and Smith for two reasons; one being that the statements were exculpatory in nature, the other being that the statements were materially inconsistent with the witnesses' testimony. Such a request was made by defense counsel prior to trial in a motion to compel discovery, but no such request was made at trial.
In Knowles v. State, 341 So.2d 913 (Miss. 1977), this Court held that the trial court did not err by denying defendant's motion to require the state to produce a written statement of one of the witnesses. In Knowles, prosecution witness Johnson testified without referring to his statement. Furthermore, the statement was not used in any manner during the trial. Cross-examination of Johnson revealed no contradictions in his testimony and no request was made by defendant to inspect the witness's statement to determine whether there were any contradictions. In the Knowles case this Court stated:
In Mattox v. State, 243 Miss. 402, 137 So.2d 920 (1962), on suggestion of error 139 So.2d 653 (1962), we held that granting or refusing an accused's request for the production or inspection of a writing in the possession of the prosecution lies in the sound discretion of the trial court. The procedure for laying a proper foundation was stated in Mattox, as follows:
Refusal of an accused's request for production of such a writing may be based upon the failure to lay a proper foundation by taking the necessary preliminary steps and by showing that the statement is at variance with the writer's testimony. Anno., 156 A.L.R. at 350. Since there were no material contradictions in Grayson's testimony, it was the duty of appellant's counsel to lay a proper foundation in some other way for inspection of the statement. This may be done by submitting the statement to the trial court for an inspection by the presiding judge as to whether it reveals any contradictory matter. Appellant's counsel did not do this, and laid no foundation for otherwise requiring production of the statement.
... .
The foregoing principles are in accord with the great weight of authority and with the practice in this state, as indicated by Eaton v. State (163 Miss. 130, 140 So. 729), and the discussion in Bellew v. State, 238 Miss. 734, 752, 756, 106 So.2d 146 (1958), app. dismissed, 360 U.S. 473, 79 S.Ct. 1430, 3 L.Ed.2d 1531, 361 U.S. 858, 80 S.Ct. 43, 4 L.Ed.2d 96. (243 Miss. at 418, 419, 420) [137 So.2d 920]; 139 So.2d at 654. (Id. at 916).
*648 In the case sub judice, the statements of Ivy and Smith were not used in any way at trial. Cross-examination of the witnesses revealed no material contradictions. A review of the statements by this Court revealed no material inconsistencies with the trial testimony and neither statement was exculpatory in nature. Therefore, it was not error to deny a new trial on this basis.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.