# THE STATE OF NEVADA, Respondent, v. FRANK SHEELEY, Appellant.

No. 3434

September 20, 1945.

162 P. 2d 96.

*John R. Ross,* of Carson City, for Appellant.

*Alan Bible,* Attorney General, *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, of Carson City, and *Melvin E. Jepson,* District Attorney, and *Harold O. Taber* and *C. Lester Zahniser,* Assistant District Attorneys, all of Reno, for Respondent.

## OPINION

By the Court, DUCKER, J.:

Appellant was convicted in the Second judicial district court of the County of Washoe, for the crime of receiving stolen property. He was sentenced to a term of not less than one year, nor more than five years in the state prison, and to pay a fine of one thousand dollars. He has appealed from the judgment and the order denying his motion for a new trial.

The errors assigned are as follows:

(1) That the verdict is contrary to the evidence.

(2) That the court erred in refusing to give three instructions requested by the defendant.

(3) That the court erred in refusing to grant a new trial by reason of misconduct on the part of the deputy district attorney, which was calculated to, and did, prejudice the jury against the defendant, and prevented him from having a fair trial.

In support of the first assignment it is insisted that

the only testimony calculated to show the guilt of appellant Sheeley, was that of the state's witness, Jean Edward Jackson, who was an accomplice, and whose testimony was not corroborated on the essential elements of Sheeley's guilt; that he was found guilty of a crime he did not commit, namely, receiving stolen goods, in that the evidence, if it proved anything, proved he was guilty as an accessory and therefore a principal to the crime of larceny and should have been acquitted of the crime charged. Henceforth we will refer to appellant as such, or by his proper name.

The state's witness, Jackson, testified substantially as follows: On August 20, 1944, and since the 3d and 4th of the preceding month, he was employed as a bartender by William Harrah at the Blackout Bar at Lincoln alley in the city of Reno. The Blackout Bar was owned and operated by Harrah, and among the equipment used in connection therewith, also owned by him, was one $1 slot machine. Jackson had been acquainted with the appellant Sheeley for approximately three or four months prior to said August 20. The latter frequented the Blackout Bar during that time. On August 15 he entered into an arrangement with Sheeley to sell him the said slot machine for $500, with the understanding that Sheeley would bring in some one not so well known as himself and introduce him to Jackson to take the machine out of the place. On said August 20 between the hours of 7 and 8 p. m., Jackson phoned to Sheeley at the Silver Dollar on Center street in Reno, with which the latter was connected, and pursuant to the conversation between them, Sheeley came to the Blackout Bar at about 8:30 that evening with a man by the name of Collins and had a drink at the bar. Sheeley said he had the car parked at the storeroom back door. Jackson suggested that he would take the slot machine out himself and walked from behind the bar; removed it from its pedestal, and took it to the storeroom and set it down to open the door. When he opened the door Sheeley was standing there and Collins was holding the car door open

and sitting behind the driver's seat. Sheeley picked up the machine and Jackson closed the door and locked it and went back to work. He was not authorized by Harrah to sell the machine. His only authority at the Blackout Bar was to take care of the business of selling drinks. He took the machine, he said, with the intention of depriving Harrah of its ownership. Around 9 o'clock that evening Jackson checked his cash, turned it into the office, met his wife and went directly to the Silver Dollar Bar for the purpose of collecting the $500. He found Sheeley there, who told him that he could not pay him the $500, because the person he was reselling the machine to didn't know whether he could make a profit off of it himself because he had bought similar machines for a cheaper price.

Jackson testified on cross-examination that he had been charged in the district court with grand larceny for receiving the slot machine and had plead not guilty to the information.

In rebuttal Jackson testified that on August 14 he and his wife, in response to a call from Sheeley, went to his Oxford Apartments and there Sheeley proposed to him that he go to the district attorney and sign a statement that he had permission from Harrah to sell the machine, and that a previous statement he had signed was under duress and under promise that he would be exonerated when the trial was over; that if he would do this Sheeley would see that he got money enough to get out of town, and at his (Sheeley's) trial he could make a plea and stand a fine. Mrs. Jackson, in rebuttal, corroborated this testimony. Clayton Collins, a witness for the state, testified among other things not essential to be stated, that on August 20, 1944, around 8 o'clock in the evening, he and Sheeley went in a car into Douglas alley and parking on Lincoln, went through the back entrance into the Blackout Bar where they met the bartender who asked Sheeley if he had a car. Sheeley said yes. The bartender then asked them to have a drink. He then said, "I will get it for you," or "I can get that for you

now." Sheeley and Collins then went back to the car and the bartender brought a dollar slot machine out and placed it in the car. He brought it through the storeroom door. Collins drove the car to the Oxford Apartments on Lake street where Sheeley carried the machine upstairs. Then they walked down town and met Jackson. Collins then left. He did not hear any conversation between them.

Harry D. Fletcher, chief of police of Reno, was a witness for the state and testified to the following conversation he had in his office with appellant on the morning of August 21:

"Q. Will you tell the court and jury in substance what the conversation was? A. It was in regard to a slot machine which had been stolen out of Harrah's Bingo Parlor. * * *

"Q. What was said about it? A. I asked Sheeley what became of the slot machine that was taken out of the Blackout Bar and he stated that he didn't know anything about any slot machine. He didn't know what I was talking about.

"Q. What else was said? A. So then I read a report or statement made by Jackson to the effect that the machine had been taken out of the Blackout Bar the night previous, and then Sheeley told me he would bring the slot machine back, after reading this statement implicating him and Jackson, and I told him that the machine was listed as stolen and I wanted it back with the contents, about $200.00 in the machine. Sheeley was on bond at that time."

William Harrah, a witness for the state, testified in substance that he operated the Blackout Bar on 231 Lincoln alley in the city of Reno. He owned the dollar slot machine presented to him as state's exhibit A. It disappeared from the Blackout bar on the night of August 20. He valued it at $1,000. He paid $450 for it. He knew Sheeley. Had seen him in the Blackout frequently prior to August 20. Sheeley never negotiated with him

for the purchase of the machine. Witness never author-
ized Jackson to sell the machine or remove it from the
Blackout Bar. Witness saw Sheeley in the Blackout
Bar on the afternoon of August 21 and the following
conversation took place in the presence of R. A. Ring,
manager of the Bingo Parlor and Bar: "A. Mr. Sheeley
came in the bar and said: 'Where is your dollar
machine? I came in to play it,' and I said: 'You ought
to know,' and he bought a drink, and I believe I said,
'Where is the machine?' and he said, 'I have it.' And I
said, 'How do I go about getting it back?' and he said,
'Well, you have to drop the charges,' and I said, 'I don't
know anything about dropping charges. I didn't make
any charges.' He said, 'The charges will have to be drop-
ped or the machine will wind up in the river,' and I said,
'I didn't make any charges,' and he said, 'somebody did,
because they picked me up,' and he turned to Mr. Ring
and said: 'Did you make any charges?' and Mr. Ring
said, 'No, * * *' and Mr. Sheeley suggested we go
and talk to the chief of police. * * * On the way
to the police station Sheeley said, 'Let us get this
straight, are you going to drop the charges?' and I said,
'I understood we were going to talk to the chief of police
about it,' and I said, 'I want my machine back,' and he
said, 'Oh, you are backing out,' and then he left us. Saw
him later that day at the Blackout. He said the machine
had not been opened and started to leave, and then came
back and said, 'Whenever you can get those fellows to
take the pressure off of me I will appreciate it,' and I
said, 'O. K.' There was $196.00 in the machine."

Robert Ring, a witness for the state, was present at
the Blackout Bar and at the police station on August 21
and testified substantially to the same conversation as
testified to by Harrah.

■ The defense interposed was that appellant Sheeley
was at all times acting in good faith and believed that
Jackson had authority to sell the machine. Sheeley
asserted in his testimony that on finding that the

machine had money in it and knowing that a man would not sell a machine with money in it, he met Jackson and told him there was something wrong and that he would not pay him the $500 without a bill of sale or at least the keys to the machine; and that he then immediately tried to contact Harrah at the Blackout Bar but could not find him, and two or three hours later was arrested by the chief of police, and charged with stealing the machine. It is unnecessary to set out in extenso the testimony given in support of the defense. The jury did not believe that Sheeley was a bona fide purchaser, and we are of the opinion that the evidence is sufficient to support the verdict of guilty as charged.

■ In this connection, appellant contends that he was found guilty of a crime he did not commit, namely, receiving stolen property. It is insisted strenuously that the evidence, if it proves anything, proves that he was an accessory before the fact to the crime of larceny and should have been proceeded against as a principal under sec. 9958 N. C. L. But the evidence also discloses that he committed the offense of receiving stolen property. Larceny, and knowingly receiving stolen property are separate and distinct crimes under our statutes. Sections 10323 and 10335 N. C. L. Therefore, under the circumstances of this case the state could elect to prosecute for either offense. State v. Webber, 112 Mont. 284, 116 P. 2d 679, 686, 136 A. L. R. 1077. In the case supra it appeared that the defendant was an accessory before the fact to the larency, but did not participate in its caption or asportation. He was convicted for receiving stolen property and the court held:

"Larceny and receiving stolen property are under our statutes separate and distinct crimes and where as here the evidence shows the defendant guilty of both crimes, we think it is optional with the state to prosecute the offender for either."

See also to the same effect Smith v. State, 59 Ohio St. 350, 52 N. E. 826; People v. Thompson, 274 Ill. 214, 113

N. E. 322; Metcalf v. State, 98 Fla. 457, 124 So. 427; People v. Rivello, 39 App. Div. 454, 57 N. Y. S. 420; People v. Stoddard, 48 Cal. App. 2d 86, 119 P. 2d 160; Rountree v. State, 144 Tex. Cr. R. 576, 164 S. W. 2d 847; Reser v. State, 27 Ariz. 43, 229 P. 936; 53 C. J. p. 514. It is stated in 45 Am. Jur. p. 393:

"Thus, it has been said that the reason for the general rule, that is, that the thief may not receive the stolen property from himself, disappears where the receiving of the stolen property is not embraced in the caption and asportation, or where the person prosecuted for the receiving is not the principal thief or guilty of the actual taking and carrying away, although guilty of assisting in the larceny or as accessory before or after the fact. Accordingly, the prevailing American rule appears to be that an accused may be convicted of criminally receiving stolen property, even though he was a guilty participant in the stealing of it, where he took no part in the actual caption and asportation but participated only as an accessory before or after the fact, or in a manner not involving his presence at the taking, even though made a principal in the larceny artificially, by statute."

■ Appellant insists that the rule cannot apply here for the reason that the evidence shows that he participated in the asportation of the property from the dominion of the owner. Hence he would come within the rule that one who commits larceny cannot be adjudged guilty of receiving the thing stolen. This contention is based upon the testimony of Jackson, who said he took the machine and set it down in order to open the door. But both Collins and Sheeley testified that Jackson took the machine out and placed it in the car. It is argued that as the jury convicted Sheeley they must have believed Jackson and disbelieved Sheeley and his witnesses. This is the purest speculation. But it is of no importance whether the jury believed Jackson or the others. The larceny was complete at the very time Jackson took the machine for the purpose of delivering it to appellant, he having

taken possession of it with a felonious intent—even if it was not then removed from the owner's premises. People v. Rivello, supra.

■ Further in support of the contention that the verdict was contrary to the evidence, it is asserted that Jackson was an accomplice and being such, corroboration of his testimony was necessary, and further contends that the instructions given by the court relative to what constitutes an accomplice, were insufficient; in other words, it is appellant's contention that the court should not have defined what constitutes an accomplice and left to the jury under such an instruction, a determination of whether or not he actually was an accomplice, but should have instructed the jury that Jackson was in fact an accomplice, and being such, his testimony must be corroborated. This because as appellant views the evidence, there is no conflict on said question. Authorities differ as to whether the thief can be an accomplice to the crime of receiving stolen property. In California in the early case of People v. Kraker, decided in 1887, and reported in 72 Cal. 459, 14 P. 196, 1 Am. St. Rep. 65, it was held that the question of whether or not the thief was an accomplice, was for the jury and should be submitted to them under proper instructions. This case was later held to be inapplicable because of the amendment of the statute in 1915. This amendment defined an accomplice. The statutes of Nevada contain no such definitions and they are much the same as were the statutes of California at the time of the rendition of the said decision in the case of People v. Kraker, supra. The rule in New York is that the thief can be an accomplice of the one who receives stolen property. People v. Kupperschmidt, 237 N. Y. 463, 143 N. E. 256, 32 A. L. R. 447. The distinction, as made in California because of the said statute of 1915, is fully discussed in the case of People v. Williams, 46 P. 2d 796, at page 797. We think in this case the question of whether or not Jackson was an accomplice was for the jury, the evidence being in conflict. The trial court recognized such to be the fact and under the law very properly submitted the question

to the jury and give it proper instructions. State v. Coroles, Utah, 277 P. 203.

 The evidence is sufficient to justify the jury in finding that Jackson was an accomplice, and there is also sufficient corroboration of Jackson's testimony to authorize the jury to act thereon. It must be presumed by this court that the jury followed the evidence in the case, and the law given by the court. This court cannot speculate as to which witnesses were believed by the jury and what evidence they acted on. We can only look to the whole record and determine whether the verdict rendered finds support therein, and as to this, we find the evidence to be ample.

█ The other errors assigned need little discussion. The instructions proffered by appellant were not discussed by his counsel. They were properly refused as they contained incorrect statements of the law. In this connection we will state that the attorney for the appellant was not his attorney at the trial of the case.

The court did not err in refusing to grant a new trial on account of the following remarks of the deputy district attorney in his closing argument to the jury:

"In summing up this case for you, I leave with you one thought. If you want to clean up this town * * * if you want to show the Center street commandos who is running this town. * * *″

█ True, the prosecutor was out of bounds of legitimate argument in making such statements. They were promptly objected to by counsel, and the court, with equal promptness, rebuked the deputy district attorney and instructed the jury not to pay any attention to anything not brought out in the evidence. The prosecutor then apologized to the court. We think, therefore, that appellant sustained no prejudice by reason of the remarks. State v. Squier et al., 56 Nev. 386, 54 P. 2d 277.

For the reasons given, the judgment and order denying the motion for a new trial are affirmed.