THOMAS SERRANO, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5434

November 27, 1968                    447 P.2d 497

*Robert E. Rose* and *F. DeArmond Sharp,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, *Virgil D. Dutt* and *Gene R. Barbagelata,* Deputy District Attorneys, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Early in the evening of September 3, 1966 Barry Forget and Thomas Serrano engaged in an argument while in a Reno bar. Forget threatened to kill Serrano, but upon the intervention of the bartender the two calmed themselves and shook hands. After more drinking Serrano left the premises but as he did so Forget followed him, apparently to emphasize his regret at the threat, and again they shook hands in a friendly manner. However, 45 minutes later Serrano returned while Forget was lighting a cigarette for a female patron, his back to the entrance. Serrano was carrying a .45 caliber pistol. He said, "Now who did you say you were going to kill." He then shot Forget. Serrano testified that he thought Forget made a move for his gun. Serrano fired the entire clip of six bullets, hitting Forget three times, then beat him over the head with the pistol until it broke. Forget died 11 days later. Serrano was convicted of murder in the first degree and sentenced to life imprisonment without possibility of parole. He asserts on appeal that his conviction should be reversed because of several alleged errors committed by the trial court as hereinafter discussed.

1.   The state used the testimony of one of Serrano's witnesses before the grand jury to allegedly impeach the same witness when he testified at the trial. The grand jury testimony took place after an indictment had been returned. See Serrano v. State, 83 Nev. 324, 429 P.2d 831 (1967). The question now is whether the post-indictment testimony should have been suppressed.

At the trial the witness was asked what Serrano had said to him after the initial argument with Forget. He replied that he did not recall. Then his grand jury testimony was used to show that he had previously answered the same question by stating that Serrano said, "Well, it's just some musclehead trying to push people around."

The post-indictment testimony before the grand jury, even if it were illegally obtained, can still be used to impeach the

witness on a matter not related to the guilt or innocence of the defendant. Walder v. United States, 347 U.S. 62 (1954), holds that illegally obtained evidence relevant to the guilt or innocence of the defendant may be used provided its use is confined to impeaching the credibility of the defendant or another witness. The issue is narrowed in this case because the subject matter is collateral, not direct, does not go to guilt or innocence, nor does the testimony necessarily impeach the witness because it was used largely to refresh his recollection. See also Note, Limited Use of Unlawfully Obtained Statements to Impeach Defendant's Credibility, 13 N.Y.L. Forum 146 (1967); Note, Impeaching the Prosecution Witness: Access to Grand Jury Testimony, 28 U.Pitt.L.Rev. 338 (1966).

2. The prosecutor remarked in the presence of the jury while the defendant was testifying that the defendant was "coached." The remark was ordered stricken and the jury admonished to disregard it. Under the circumstances of this case the statement was error but we deem it harmless. Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967); Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966); Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964); Dotson v. State, 80 Nev. 42, 389 P.2d 77 (1964); Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962); State v. Helm, 66 Nev. 286, 209 P.2d 187 (1949); State v. Teeter, 65 Nev. 584, 642–647, 200 P.2d 657 (1948); State v. Sheeley, 63 Nev. 88, 162 P.2d 96 (1945); State v. Lindsay, 63 Nev. 40, 161 P.2d 351 (1945); Annotation, 29 A.L.R.2d 996, 1022 (1953).

3. After the jury retired for deliberation they sent a query to the judge as follows:

"Does imprisonment without possibility of parole mean exactly what it states or is ultimate parole possible; and * * * life with possibility of parole, what is the minimum number of years of imprisonment before becoming eligible for parole?"

Following is the court's reply to the jury:

"The Court informs you that as to the first question this cannot be answered by this Court, imprisonment without possibility of parole. This Court loses jurisdiction after sentence is pronounced. There are other boards, there are other avenues for the defendant to take with regard to this problem. If you pronounce, if you recommend sentence of life without the possibility of parole, as far as this Court is concerned that's

what it means. Whether or not that can be modified at a later date, this Court cannot tell you because it's not within our jurisdiction, and it's not within the jurisdiction of the jury. It's your duty, if you feel that that is the penalty that must be imposed, it's your duty to recommend it, and this Court will impose it. We have no jurisdiction beyond that.

"As to the second question, life with the possibility of parole, what is the minimum number of years of imprisonment before becoming eligible for parole, the new statute provides that if the penalty is fixed at life imprisonment with possibility of parole, eligibility for parole begins when a minimum of ten years has been served. That's the only thing I can tell you." The reference to ten years was in error but for the present purposes is inconsequential.

The error claimed was in the giving of the instruction at all. However, since in a charge of murder the determination of whether parole should be allowed is within the province of the jury, the instruction was proper. Cf. Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965), where a similar comment by the prosecutor was approved.

4. Serrano's theory of defense was self-defense. The instructions given do not conflict and completely, adequately and correctly express Nevada's age-old requirement of retreat. State v. Robison, 54 Nev. 56, 74, 6 P.2d 433 (1931); State v. Stewart, 9 Nev. 120, 129 (1874). Indeed, many of the 11 instructions given on self-defense were redundant.

5. In support of the contention that Forget had a reputation for violence, witnesses testified to their involvement with Forget in a commercial undertaking. Another witness, Leslie Fry, proposed to testify in substance to the same manner as communicated to him by those witnesses. The trial court refused to allow this testimony. Since Fry's testimony would have been cumulative and unessential, there was no error in the ruling. State v. Cowell, 12 Nev. 337 (1887). See also Trimble v. Coleman Co., 437 P.2d 219 (Kan. 1968); M. A. Realty Co. v. Commission, 233 A.2d 793 (Md.App. 1967).

6. While Serrano was testifying on cross-examination, it was brought out that he did not have a permit to carry a concealed pistol. But whether he had a permit or not did not bear on his guilt or innocence of murder. The subject was only collateral and did not constitute reversible error.

Other assignments of error are asserted but they are without merit.

Affirmed.

THOMPSON, C. J., COLLINS, MOWBRAY, JJ., and WILKES, D. J., concur.