341 So.2d 913 (1977)
Jack KNOWLES
v.
STATE of Mississippi.
No. 49449.
Supreme Court of Mississippi.
January 26, 1977.
Rehearing Denied February 16, 1977.
*914 Mitchell, Rogers, Eskridge, Voge & Clayton, Dennis W. Voge, Tupelo, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
Jack Knowles was convicted in the Circuit Court of Lee County for the crime of receiving stolen property and sentenced to serve a term of five years in the State Penitentiary.
The questions on this appeal are: (1) Whether defendant, who was an accessory before the fact, but was not present at the actual caption and asportation of the stolen goods or took no part therein, but who received the goods after the theft, may be convicted of receiving stolen property. (2) Whether defendant was entitled to written statements in possession of the district attorney made by the state's witnesses.
Johnson and Wren testified for the state that they approached the defendant and asked him if he would buy some chairs from them. The defendant agreed to purchase some chairs and Johnson told defendant that he and Wren were going to steal some chairs that night from Action Industries. Johnson asked defendant for the use of a tractor to pull a trailer that was to be used in the robbery. The defendant agreed that he would furnish a red Chevrolet tractor which would be left parked at his service station, but Johnson and Wren would have to wait until he closed the service station before picking up the tractor. Keys were left in the tractor and Johnson and Wren both testified that they found the red Chevrolet tractor at the service station as planned. They drove to Pontotoc County, picked up a trailer from a furniture manufacturing company, proceeded to Action Industries and stole about one hundred chairs. These chairs, along with the trailer, were left at the furniture manufacturing plant in Pontotoc County. Johnson and Wren then returned to Action Industries where they *915 connected the tractor to a trailer loaded with chairs owned by Action Industries and delivered the chairs to the Walking Horse Truck Stop for the defendant, in accordance with their plans. Johnson and Wren returned the trailer to Action Industries and the tractor to defendant's service station. They further testified that defendant agreed to lend them the tractor and purchase the chairs with full knowledge of the planned robbery. They stated that the defendant paid them $1500 the next day and owed them an additional sum of money for the chairs stolen and delivered to him.
The defendant denied any knowledge of the robbery, denied that he lent a tractor to the robbers, denied that he agreed to purchase the chairs, and denied that he purchased the chairs.
Defendant's first assignment of error is that he was entitled to a peremptory instruction because the proof showed that he was an accessory before the fact. He argues that, under our holding in Anderson v. State, 232 So.2d 364 (Miss. 1970), he could not be convicted of receiving stolen property because the state's case showed he was guilty as a principal of the crime of larceny. In Anderson, Booth, a witness for the state, testified that Anderson agreed to buy a cow from him for $70 and to cancel Booth's debt at Anderson's liquor store if Booth would steal a cow from Joe Jones. He also testified that he stole a second cow from Jones and got a person to help him load the first cow, and Anderson secured the services of Bobby Easterling to haul the second stolen cow. He said the second cow was delivered to Anderson who paid for the cow. We held that Anderson actually advised and procured the commission of the crime; therefore, he was an accessory before the fact and thus was deemed and considered a principal under the provisions of Mississippi Code Annotated section 97-1-3 (1972). We further held that Anderson could not be convicted of receiving stolen property because he was guilty as a principal of the crime of larceny and we adhere to the rule that one who steals property cannot be convicted of receiving, concealing or aiding in concealing stolen property. Thomas v. State, 205 Miss. 653, 39 So.2d 272 (1949); Manning v. State, 129 Miss. 179, 91 So. 902 (1922). In Manning we held that the offense of stealing property and the offense of receiving stolen property are akin to the extent that the crime of receiving stolen goods cannot be committed, except as to goods which have been stolen, but the thief cannot be guilty of both offenses.
Anderson, supra, conflicts with our holding in Steele v. State, 213 Miss. 739, 57 So.2d 574 (1952). The facts in Steele are very similar to the facts in Anderson. The testimony for the state in Steele disclosed that Steele went to the home of Corley, who was employed as a day laborer by the owner of a stock farm, and arranged with Corley and Padgett to haul the cattle to the home of Steele after Steele had actually selected the ones that he wanted delivered to him. Steele was convicted of receiving stolen property and his conviction was affirmed. The Court commented that the testimony of the state warranted either a charge of grand larceny or receiving stolen property.
The prevailing rule pertaining to accessories to larceny being charged with receiving stolen property agrees with our conclusion in Steele, supra, and is stated in 76 C.J.S. Receiving Stolen Goods § 14c at 20 (1952) as follows:
An apparent exception to the rule that one who steals property cannot be convicted of receiving it, as discussed supra subdivision b of this section, is that one who was an accessory before or after the fact but was not present at the actual caption and asportation of the goods or took no part therein, but who received the goods after the theft, may be convicted of receiving stolen goods, and this is true, although statutes provide, or the rule is applied that a person who has been an accessory to a theft may be convicted as principal thief.
To the same effect is the holding of the Supreme Court of Nevada in State v. Sheeley 63 Nev. 88, 162 P.2d 96 (1945) where the Nevada Court stated:

*916 Thus, it has been said that the reason for the general rule, that is, that the thief may not receive the stolen property from himself, disappears where the receiving of the stolen property is not embraced in the caption and asportation, or where the person prosecuted for the receiving is not the principal thief or guilty of the actual taking and carrying away, although guilty of assisting in the larceny or as accessory before or after the fact. Accordingly, the prevailing American rule appears to be that an accused may be convicted of criminally receiving stolen property, even though he was a guilty participant in the stealing of it, where he took no part in the actual caption and asportation but participated only as an accessory before or after the fact, or in a manner not involving his presence at the taking, even though made a principal in the larceny artificially, by statute. (162 P.2d at 99).
We are of the opinion that the better rule is that one who is an accessory before the fact to larceny, but not present at the actual caption and asportation, but received the goods after the theft may be indicted either for larceny or for receiving stolen goods. Larceny and knowingly receiving stolen property are separate and distinct crimes under our statutes. The state, of course, must elect by its indictment which charge it will proceed on and may not try a person for both larceny and knowingly receiving stolen property where the same property is involved. Manning v. State, supra. We overrule that part of Anderson v. State, 232 So.2d 364 (Miss. 1970) holding that an accessory before the fact to larceny who is not present at the actual caption and asportation of the stolen goods may not be convicted of knowingly receiving stolen property.
The second error urged by defendant is that the trial court erred when it refused to require the state to produce the written statement of Romey Johnson, a witness for the state, which had been given to law enforcement officials.
Johnson was called as a witness and at the beginning of his testimony the defendant made a motion for the state to produce the written statement of the witness. Johnson testified without referring to his written statement to refresh his memory and the written statement was not used in any manner in the trial. The cross-examination of Johnson reflects no contradictions in his testimony and appellant did not request the presiding judge to inspect the statement and determine whether it contradicted his testimony. In Mattox v. State, 243 Miss. 402, 137 So.2d 920 (1962), on suggestion of error 139 So.2d 653 (1962), we held that granting or refusing an accused's request for the production or inspection of a writing in the possession of the prosecution lies in the sound discretion of the trial court. The procedure for laying a proper foundation was stated in Mattox, as follows:
Refusal of an accused's request for production of such a writing may be based upon the failure to lay a proper foundation by taking the necessary preliminary steps and by showing that the statement is at variance with the writer's testimony. Anno., 156 A.L.R. at 350. Since there were no material contradictions in Grayson's testimony, it was the duty of appellant's counsel to lay a proper foundation in some other way for inspection of the statement. This may be done by submitting the statement to the trial court for an inspection by the presiding judge as to whether it reveals any contradictory matter. Appellant's counsel did not do this, and laid no foundation for otherwise requiring production of the statement.
.....
The foregoing principles are in accord with the great weight of authority and with the practice in this state, as indicated by Eaton v. State [163 Miss. 130, 140 So. 729], and the discussion in Bellew v. State, 238 Miss. 734, 752-756, 106 So.2d 146 (1958), app. dismissed, 360 U.S. 473, 79 S.Ct. 1430, 3 L.Ed.2d 1531, 361 U.S. 858, 80 S.Ct. 43, 4 L.Ed.2d 96. (243 Miss. at 418, 419, 420; 139 So.2d at 654).
The defendant relies heavily on Armstrong v. State, 214 So.2d 589 (Miss. *917 1968) as support for his position, but Armstrong reaffirmed the rule that the granting or refusal of an accused's request for the production or inspection of a written statement of a state witness in the prosecution's possession lies within the sound discretion of the trial court. In Armstrong the defendant requested the court to require the state to give attorneys for the defendant a copy of statements of witnesses who had testified for the purpose of cross-examination. The judge examined the written statements to determine if there were any inconsistencies with the testimony given on the witness stand, and being convicted there were no inconsistencies, denied the request for production of the written statements of the witnesses.
In this case defendant did not request the trial judge to examine the statement for inconsistencies. Defendant did not lay a proper foundation for requiring production of the statement. Mattox, supra.
Defendant does not argue in his brief the effect of the Jencks Act (18 U.S.C. § 3500) and the case of Jencks v. U.S., 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) but in arguing the right to inspect the statement before the trial judge he cited Jencks.
The United States Supreme Court has held that neither the Jencks decision nor the Jencks Act apply to state criminal trials. In U.S. v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) the Court stated:
But questions of that character do not rise to a constitutional level. Indeed our Jencks decision and the Jencks Act were not cast in constitutional terms. Palermo v. United States, supra, [360 U.S. 343], at 345, 362, 79 S.Ct. [1217] at 1229, 3 L.Ed.2d 1287, at 1291, 1300. They state rules of evidence governing trials before federal tribunals; and we have never extended their principles to state criminal trials. It may be that in some situations, denial of production of a Jencks Act type of a statement might be a denial of a Sixth Amendment right. There is, for example, the command of the Sixth Amendment that criminal defendants have compulsory process to obtain witnesses for their defense. Palermo v. United States, supra, at 362, 79 S.Ct. [1217], at 1229, 3 L.Ed.2d 1287 [at 1300] (Brennan, J., concurring in result). But certain it is that this case is not a worthy candidate for consideration at the constitutional level.
The Court of Claims, in a conscientious effort to undo an injustice, elevated to a constitutional level what it deemed to be an infraction of the Jencks Act and made a denial of discovery which `seriously impeded his right to a fair trial' a violation `of the Due Process Clause of the Constitution.' [Augenblick v. U.S.] 377 F.2d [586], at 606-607, 180 Ct.Cl. [131] at 166. But apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten, as in Moore v. Dempsey, supra, [261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543], that the proceeding is more a spectacle (Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663, [665]) or trial by ordeal (Brown v. Mississippi, 297 U.S. 278, 285, 56 S.Ct. 461, 464, 80 L.Ed. 682 [686] than a disciplined contest. (393 U.S. at 356, 89 S.Ct. at 533-534, 21 L.Ed.2d at 545).
An examination of the record in this case does not show that the trial was conducted in violation of express constitutional mandates, and does not show that constitutional barriers and safeguards were overlooked, but to the contrary, shows that the defendant received a fair trial.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.