478 So.2d 315 (1985)
Lewis TYLER a/k/a "Fish Slim"
v.
STATE of Mississippi.
No. 55744.
Supreme Court of Mississippi.
November 6, 1985.
William A. Pate, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
*316 Before WALKER, P.J., and HAWKINS and DAN M. LEE, JJ.
HAWKINS, Justice, for the Court:
Lewis "Fish Slim" Tyler appeals from his conviction in the Circuit Court of the Second Judicial District of Harrison County of the crime of sale of a controlled substance, and sentence of one year. Tyler at the time of trial was 74 years of age with no prior criminal record.
Finding the evidence offered on behalf of the state is in irreconcilable conflict, we reverse and render.

FACTS
Pentazocine, also known as Talwin, comes in light orange or peach colored tablets. It is a Schedule II controlled substance under Miss. Code Ann. § 41-29-115 (1972).
Pyribenzamine, or triplennamine hyrdochloride, comes in blue tablets, is an antihistamine drug and is not a controlled substance.
The two drugs are sold in "sets" by drug traffickers as a substitute for heroin.
On June 3, 1982, Shirlene Anderson, undercover agent for the Mississippi Bureau of Narcotics, purchased five sets of these drugs from Tyler in a Gulfport saloon. Tyler was indicted October 1, 1982, by the grand jury of the Second Judicial District of Harrison County.
At trial Anderson testified Tyler delivered the tablets to her in five packages of tin foil, that she examined them when she made the purchase, and later at the local Bureau office she counted five of each, labeled them and sealed them in a package, and personally delivered the package to the Mississippi Crime Laboratory in Gulfport. Her testimony that she carefully examined the tablets and counted five each of the light orange (or peach), and blue is unequivocal and positive.
Allison Smith, drug analyst for the Mississippi Crime Laboratory, testified that from the package delivered her she personally tested one of the light orange or peach colored tablets, and it was pentazocine, also known as Talwin, and that she tested one of the blue tablets and it was triplennamine, also pyribenzamine.
She was positive and unequivocal that she tested one of the light orange, or peach, colored tablets, and it was Talwin, and one of the blue tablets and it was pyribenzamine.
The testing consisted of crushing one tablet of each kind. When Smith was introducing the samples into evidence, it developed there remained five orange pills and four blue pills.
Because of this discrepancy, Tyler moved the court to dismiss the charge, and for a directed verdict, which the circuit judge in the record stated he was reluctantly overruling.
Following conviction Tyler moved for a new trial. In his ruling on the motion for new trial, the court stated:
BY THE COURT:
She had crushed up one of each and still had nine, showing a discrepency [sic] of the testimony between the young girl who bought the T's and Blues from you and the lab report. Consciously, this Judge has a problem with the quality of that type of proof allowing it to stand and allowing a verdict to stand.
I make this observation because I don't want the Supreme Court to go off on a tangent and find that technically the Defendant did or did not object timely, except I'm asking the Supreme Court for direction on this point, not only on this case, but on future cases. Should a person be convicted in our district in and with the quality of the testimony that is in the record concerning the discrepency [sic] between the testimony of the agent and the testimony of the lab technician. Mr. Pate has presented certain authorities to the Court and I have researched it with the limited time that I have. To try to find a way that I could find some law to support my gut feeling, but I have not been able to find any law. I did not feel like the cases that Mr. Pate provided me *317 nor the cases that I found were in point. It may be because it is so obvious that there is no law written on it, that it is clear that it ought to be kicked out and maybe it is clear that it ought to be allowed. That being the case, I'm compelled under my oath to overrule your Motion for a New Trial.

LAW
The jury is the judge of the weight and credibility of the witnesses. They are free to accept and reject all or some of each witness's testimony. See: Johnson v. State, 477 So.2d 196 (Miss. 1985).
This rule undoubtedly applies when there is a jury issue made. Our threshold question in this novel case, however, is whether a jury issue was made. Two representatives of law enforcement, neither of them impeached or hostile to the state, gave certain, unequivocal  she positively could not have been mistaken about it  eyewitness testimony which is absolutely impossible to reconcile. If we accept Anderson's testimony as accurate, Smith could not have run any test on the Talwin tablets. If we accept Smith's testimony, then Anderson could not count to six. The state was bound by the testimony of its own witnesses in this case. See: Dunk v. State, 84 Miss. 452, 36 So. 609, 610 (1904); Manning v. State, 188 Miss. 393, 195 So. 319 (1940); Bradshaw v. Stieffel, 230 Miss. 361, 92 So.2d 565 (1957); Jackson County Development, Inc. v. Mississippi State Highway Commission, 262 So.2d 416, 419 (1972).

CONCLUSION
When simple factual issues are testified to which simply cannot make a jury issue, a directed verdict should be granted the defendant. Likewise, when, as in this case, an irreconcilable conflict is created in which no rational jury could find for the state, a directed verdict is proper. The only possible conclusion any rational jury could reach in this case was that the samples were mixed up in some manner at the laboratory, or the test was not made.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.