496 So.2d 681 (1986)
Jose ARTEIGAPILOTO
v.
STATE of Mississippi.
No. 56532.
Supreme Court of Mississippi.
October 15, 1986.
*682 Barbara Holley Reid, Meridian, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and GRIFFIN, JJ.
PRATHER, Justice, for the Court:
The grand jury of Lauderdale County Circuit Court returned an indictment charging Jose Arteigapiloto, Johnny Shields, Lisa Michelle Jones, and Curtis Way with armed robbery of the Toomsuba Shell station. The cases against Jones and Shields were severed, leaving Arteigapiloto and Way to be tried together.
At trial, both Jones and Shields testified against defendants Arteigapiloto and Way. Defendant Arteigapiloto was found guilty of armed robbery and was sentenced to life in prison, giving rise to this appeal.

I.
Should the trial judge have suppressed Mrs. Joan Bartlett's in-court identification of the appellant?
Some six months after the armed robbery Mrs. Joan Bartlett, the robbery victim, was shown a series of five 3" X 4" photographs of various men. Mrs. Bartlett selected the photograph of the defendant *683 and identified him as the man who robbed her.
Arteigapiloto subsequently filed a motion to suppress any in-court identification of him, claiming the photographic lineup had been unnecessarily suggestive. An evidentiary hearing was held February 6, 1985 and appellant's motion was overruled. The trial judge stated, "It appears to me to be good photographs. There is one in there I can hardly differentiate myself."
During the trial of this case on the merits, Mrs. Bartlett made a positive in-court identification of the defendant as the man who robbed her. Appellant assigns on appeal that Mrs. Bartlett's in-court identification was tainted, and should have been suppressed, because the photographic lineup was unnecessarily suggestive.
"A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive." York v. State, 413 So.2d 1372, 1383 (Miss. 1982); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
Having examined the photographic array, the Court finds the appellant was in no manner conspicuously singled out. Therefore, the Court holds the photographic lineup was not unnecessarily suggestive.

II.
Was appellant properly denied discovery of the statement of witness Shields and was appellant denied his right to confront and cross-examine witnesses?
During appellant's trial, the state called as a witness codefendant Shields. Appellant objected to Shields' testimony because a written statement given by Shields to Lauderdale County authorities had not been revealed during discovery. The trial judge halted the trial until Shields' prior statement was produced for the court's inspection.
Shields subsequently testified to facts materially consistent to the prior statement. The cross-examination of Shields was conducted by appellant himself with assistance from a language interpreter.[1] During this cross-examination, appellant pursued a line of questioning implying that Shields had given additional statements to Pearl River County authorities when Shields was arrested for a robbery that occurred shortly after the Toomsuba robbery and involved the same four defendants.
The record reflects that at the time appellant was cross-examining Shields, appellant was clutching a piece of paper that was never introduced into evidence and has never been identified. The prosecutor stated repeatedly that he had no objection to the paper being introduced, however, it never was introduced into evidence.
Throughout his cross-examination by appellant, Shields denied giving more than one written statement. Also during appellant's cross-examination of Shields, the trial judge encouraged appellant to limit his cross-examination to facts relevant to the Lauderdale County charges.
Under his second assignment of error, appellant raises three issues.

A.

SHOULD APPELLANT HAVE BEEN PERMITTED TO CROSS-EXAMINE SHIELDS WITH THE BENEFIT OF THE WRITTEN STATEMENT GIVEN TO DEPUTY FRANKLIN OF LAUDERDALE COUNTY?
Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice provides, in part, as follows:
Upon request of the defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found *684 to be materially inconsistent with the witness's testimony, the statements shall be supplied to defense counsel prior to cross-examination.
In Barnes v. State, 460 So.2d 126, 133 Miss. 1984, this Court elaborated on Rule 4.06 by stating:
First, statements of witnesses the State contemplates calling are not per se discoverable. Knowles v. State, 341 So.2d 913, 916 (Miss. 1977). On the other hand, Cassibry v. State, 404 So.2d 1360 (Miss. 1981), holds that
... a very wide discretion must be afforded trial judges in deciding when to permit a defendant to examine the statement of a prosecution witness... . Two tests are important in determining whether the accused should have been given a copy of the statement: (1) did the statement contain information favorable to the accused not revealed in the trial? and (2) was the statement substantially the same as the testimony of the witness?
404 So.2d at 1371.
In the present case, the prior written statement of Shields neither contained information favorable to the accused nor was substantially different from Shields' testimony. Commenting on the statement, the trial judge said: "It seems to be identical to his testimony. There was no variance, nothing to be used for impeachment purposes." This Court finds no error in the actions of the trial judge.

B.

SHOULD SHIELDS' ALLEGED PEARL RIVER COUNTY STATEMENT HAVE BEEN DISCLOSED?
The very existence of such alleged statement is questioned. The record contains no written statements given by Shields, other than the statement given in Lauderdale County. Shields, himself, testified he had given only one written statement.
Appellant admits that "he can only point to the suggestions during cross-examination of Shields" to substantiate that another written statement existed. Absent some showing that such a statement existed, the Court holds this issue has no merit.

C.

WAS APPELLANT'S CROSS-EXAMINATION SUPPRESSED?
Appellant argues he was denied effective cross-examination of Shields when he was not allowed to question Shields regarding alleged statements made to the Pearl River County authorities.
The judge was correct to keep appellant's cross-examination of Shields within the bounds of the offense committed in Lauderdale County.
To be sure, the cross-examination conducted by the appellant with use of an interpreter was chaotic. In the interest of affording appellant a fair trial on the merits of the offense committed in Lauderdale County, the trial judge attempted to prevent appellant from introducing prejudicial evidence regarding the Pearl River County offenses. This Court finds the actions of the trial judge proper under the circumstances.

III.
Was appellant entitled to a mistrial?
During the direct examination of Joan Bartlett, the prosecutor attempted to introduce a photograph of appellant. Counsel for appellant objected because she had not been provided a copy of the photograph. The prosecutor responded, "If it please the Court, these were provided in discovery. This item came from Pearl River County, Mississippi." Moments later, before the photo was admitted into evidence, the Court asked, "[I]s there any writing on it that would cause any problem?" The prosecutor responded, "It was used as an exhibit in another trial. There is writing of that nature."
Because of those comments, appellant contends he should have been granted a mistrial. Rule 5.15 of the Uniform Criminal *685 Rules of Circuit Court Practice requires the trial judge to grant a mistrial "if there occurs during the trial an error or legal defect in the proceedings ... resulting in substantial and irreparable prejudice to defendant's case."
The Court holds that the prosecutor's comments created no substantial or irreparable prejudice to the defendant's case. Therefore, the trial judge was correct in overruling defendant's motion for mistrial.
Under this assignment of error, appellant also objects to the testimony of Sheriff Holiday and Deputy Bodie, both of Pearl River County. Sheriff Holiday testified concerning the arrest of the appellant at a roadblock and described the search of appellant's car. Sheriff Holiday also established the chain of custody of the baseball cap taken from appellant's car and identified by Joan Bartlett as the same type cap worn by her assailant. Likewise, Deputy Bodie established the chain of custody of photographs and the gun retrieved from appellant's car. The gun was also identified by Mrs. Bartlett as one similar to the one used to rob her.
Appellant contends the testimony of the two Pearl River County officers was "uncalled for and evidenced a clear intent to get before the jury the armed robbery in Pearl River County... ."
It is worth noting that no details of the Pearl River County robbery were allowed or even offered into evidence. Additionally, the trial judge sustained numerous objections and instructed the jury to disregard certain remarks when the state as well as the appellant trespassed beyond admissible ground. Where the court sustains objections to improper testimony and instructs the jury to disregard such testimony, it is presumed the jury follows the court's instructions. Sand v. State, 467 So.2d 907, 911 (Miss. 1985).
The Court holds the introduction of testimony from Sheriff Holiday and Deputy Bodie was proper and not a source of reversible error.

IV.
Was the appellant entitled to a continuance?
On Wednesday, February 13, 1985, the appellant moved to have the trial continued for the fifth time. This motion was made on the morning of the trial, after appellant's counsel announced the day before that no additional continuance would be necessary.
Appellant testified during a hearing on the continuance motion that he had received two letters from one Marcus Antonio that purported to exonerate appellant of the armed robbery charge. The letters, written in Spanish, were allegedly received Friday, February 8, 1985 and Tuesday, February 12, 1985, while appellant was incarcerated in the Lauderdale County Jail.
Appellant contends the denial of a continuance on the morning of the trial denied him due process of law because his counsel was deprived the opportunity to investigate the contents of the two letters and to locate their author.
The granting of a continuance rests in the sound discretion of the trial judge. Smith v. State, 463 So.2d 1102, 1103 (Miss. 1985); Miss. Code Ann. § 99-15-29 (1972). "A denial of the continuance shall not be grounds for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom." Miss. Code Ann. § 99-15-29 (1972).
Appellant's defense was that Marcus Antonio was traveling with Lisa Jones, that Antonio committed the robbery, and then paid Johnny Shields to cover up the robbery. However, neither Lisa Jones nor Johnny Shields admitted knowing Marcus Antonio. Furthermore, appellant never attempted to have the letters admitted into evidence.
Under those circumstances, the Court holds the trial judge did not abuse his discretion in denying appellant's fifth motion for continuance.

V.
Was appellant denied due process of law or confrontation of witnesses by the alleged *686 ineffectiveness of the court appointed language interpreter?
During the cross-examination of Johnny Shields by the appellant, a language interpreter was used as an intermediary. The record reflects that at one point appellant began speaking too rapidly for the translator to understand. Appellant agreed to speak more slowly and to ask shorter questions.
Appellant's counsel moved for a recess to allow appellant and the interpreter time to get acquainted with each other's voices, but the recess was denied. Appellant's counsel later objected to continuing with the particular interpreter, claiming the interpreter was ineffective and appellant was being denied his constitutional right of confrontation of witnesses. The motion was overruled.
On appeal, Arteigapiloto contends he was denied a fair trial, and effective confrontation of witnesses. The Court disagrees.
A fair reading of the record does not reflect the prejudice portrayed by the appellant. The interpreter simply could not translate at the rapid pace at which appellant spoke.
This Court holds that appellant was not denied effective confrontation of witnesses.

VI.
Is the verdict supported by credible evidence?
Under his final assignment of error appellant focuses on the testimony of appellant's accomplice Johnny Shields. Pointing to inconsistencies in Shields' testimony, appellant urges the Court to reverse his conviction because of insufficient evidence under all the circumstances.
In addition to the testimony of Johnny Shields, the jury heard Lisa Jones testify that appellant left his car with a gun and returned with a cigar box containing money. The jury also heard identification testimony from Joan Bartlett and Lavell Brown.
This Court has stated many times that the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of each witness's testimony. Tyler v. State, 478 So.2d 315, 317 (1985). Furthermore, where a jury's decision is based on conflicting evidence, it will not be set aside where there is substantial and believable evidence supporting the verdict. Billiot v. State, 454 So.2d 445, 463 (1984).
This Court holds the evidence at trial was sufficient to support the verdict.

VII.
Having found no reversible error, the armed robbery conviction and sentence of life in prison of Jose Arteigapiloto is affirmed.
AFFIRMED.
WALKER, C.J., and ROY NOBLE LEE and HAWKINS, P. JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Appellant claims to speak only Spanish. In criminal cases, language interpreters are allowed, when necessary, by Miss. Code Ann. § 99-17-7 (1972).