## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-KA-00194-SCT

*JACQUELINE ANN BARNES AND DENNIS RAY FLEMING*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/94 |
| TRIAL JUDGE: | HON. RICHARD T. WATSON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LEONARD H. ROSENTHAL |
| | DAVID M. READ |
| | ROBERT E. CLARK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY | ALONZO STURGEON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

The Appellants, Jackie Barnes and Dennis Fleming, were indicted on five counts of capital murder in Adams County. A jury found that Barnes and Fleming intentionally set fire to a house killing, the owner and four of her relatives. Barnes and Fleming assert the following assignments of error:

**I. THE VERDICT OF THE JURY WAS AGAINST THE OVER-WHELMING WEIGHT OF THE EVIDENCE OR THE LACK THEREOF.**

**II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANTS' MOTION FOR A MISTRIAL FOR FAILURE OF THE STATE TO DISCLOSE ALL STATEMENTS OF TIMOTHY BELTON.**

After consideration of these two points, we affirm the verdict of the jury.

## DISCUSSION

The incident in question took place in the early morning of August 12, 1992. A dwelling at 17 Old Wilson Lane in Natchez was burned by someone pouring gasoline through the back door and striking a match, which resulted in an explosion. Killed in the explosion and fire were Clora Green, the owner of the house, her sons, Walter and Willie, and two grandchildren, Tara Ford and Louis Chatham, Jr.

Ricky Davis from the State Fire Marshall's office and Johnny Franklin, Natchez Fire Marshall, testified that the fire was a result of arson. Seven-year-old Ikelane Ford, the only survivor, identified Barnes and Fleming as the persons she saw in her yard right before the fire. Ikelane testified she was standing on a couch looking out the window for her mother, who was to return from Barnes's house sometime that evening. She testified that she saw Fleming come over the fence, pick up her uncle's jug, which contained gas, go over to the area by the steps, light a match and start the fire. She testified that Barnes was waiting by the fence; she said she heard Barnes tell Fleming to hurry up and that she (Ikelane) was looking out the window.

Ikelane testified at trial that she tried to wake her brother and sister by screaming and biting them, but she was unsuccessful in her attempts. Ikelane was pulled out of a second story window by unknown persons.

Ikelane's testimony at trial differed somewhat from the testimony she gave at the preliminary hearing. At the preliminary hearing, she stated that she was standing on a chair looking out the window on the fateful night. She further testified that she couldn't see what was in Dennis's hands or what was going on at her back door. Ikelane also stated at the preliminary hearing that she and her sister and grandmother ran through the house when the fire started and that she attempted to drag her brother through the house, but he woke up and said he was tired. She testified that she did not hear Barnes say anything to Fleming.

Prior to trial Barnes and Fleming filed a Motion for Disclosure of Evidence. The State was ordered to disclose all that evidence required of them by Rule 4.06 of the Mississippi Uniform Rules of Circuit Court Practice.

At trial Timothy Belton testified for the State that he lived next door to the house and saw "somebody jump the fence." He described the man as "a little taller than me -- kind of like in his twenties." There was no objection to this testimony from the defense. On cross-examination, he repeated that the person he saw was in his twenties, and both the witness and the jury were informed that the defendant, Fleming, was thirty-eight. Belton testified without objection. Belton gave this statement to an investigator during the trial, and the State failed to reveal it to the defense. After Belton testified, the State put one more witness on the stand and rested. At this point, Barnes and Fleming moved the court to direct a verdict in their favor, which was denied. It was after this motion that they first raised as an issue the Belton testimony, moving the court for a mistrial. The court

ordered the State not to argue that Belton identified Fleming. Then, the court overruled the motion for a mistrial on the basis that this order would cure any part of the motions affecting Barnes's and Fleming's rights.

## I. WEIGHT OF EVIDENCE

Barnes and Fleming assign two points of error for our review. They assert that the jury's verdict was against the overwhelming weight of the evidence and that the State violated its discovery duty, which prejudiced their case.

Barnes and Fleming argue that the verdict of the jury was against the overwhelming weight of the evidence or the lack thereof. They claim that by comparing the testimony of Ikelane at trial with her testimony at the preliminary hearing reasonable jurors could not render a verdict of guilty. Their argument is based on the fact that Ikelane was the only witness who implicated them.

Where a material testimonial conflict is present, our jurisprudence has a method of settling such conflicts. We leave to the jury the responsibility of determining the facts from the evidence and applying the law to those facts. *Burrell v. State*, 613 So. 2d 1186, 1190 (Miss. 1993). Jurors are free to accept or reject all or some of each witness's testimony. *Arteigapiloto v. State*, 496 So. 2d 681, 686 (Miss. 1986).

A comparison between Ikelane's testimony at the trial and the preliminary hearing does show the contradictions raised by Barnes and Fleming. However, the prosecution also elicited statements from Ikelane that she did not tell everything she did at trial in the preliminary hearing for a reason. That reason was that she was scared at the preliminary hearing because "Dennis and them were in there." For the most part Ikelane's testimonies were similar. She identified Fleming and Barnes in both. Both times she stated she tried to wake her brother and sister by pinching them and biting them.

This issue is a classic jury question. The inconsistencies in Ikelane's testimony were before the jury. The verdict reached by them was not unfathomable. Therefore, we uphold their verdict in this case.

## II. DISCOVERY VIOLATION

Barnes and Fleming also contend that the trial court erred by not granting a mistrial on the basis of the State's discovery violation. In support they cite *Hunt v. State*, 569 So. 2d 1200 (Miss. 1990), where the Court first applied the extension of Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice announced in *Brock v. State*, 530 So. 2d 146, 152 (Miss. 1988). The *Brock* amendment to Rule 4.06 requires the prosecution to turn over the contents of all written or unwritten statements, recorded or otherwise, of all witnesses. *Brock*, 530 So. 2d at 152. They further argue based on *Hunt,* the Court's holding that prosecutors should make accessible all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case. *Hunt,* 569 So. 2d at 1202 (citing *Hentz v. State*, 489 So. 2d 1386, 1389 (Miss. 1986)).

While the State did turn over the written statement of Belton, it did not contain the information that he saw someone jump over the fence. The amendment to the Rule in *Brock* requires the prosecution to turn over all written and unwritten statements, recorded or otherwise preserved. This is a continuing duty. *Mack v. State*, 650 So. 2d 1289, 1315 (Miss. 1994). The State clearly violated the

rules of discovery. However, the State argues that the defense waived the right to raise this issue on appeal, because there was no contemporaneous objection during Belton's testimony. For that matter, there was no defense objection to this testimony at all. The State asserts that the discovery violation was also waived because the defense did not follow the proper procedure under Rule 4.06 and ***Box v. State***, 437 So. 2d 19 (Miss. 1983). Both of these procedures require a defense objection at trial where the State attempts to introduce evidence not timely disclosed. Rule 4.06 provides the following procedure:

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, <u>and the defense objects to the introduction for that reason</u>, the court shall act as follows:
>
> (1) Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
>
> (2) If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court should, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

(Emphasis added.)

The ***Box*** guidelines articulated by the Court in ***Cole v. State*** are:

> <u>Upon defense objection</u>, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
>
> <u>If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue</u>.
>
> If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

525 So. 2d 365, 367-68 (Miss. 1987) (emphasis added).

The action, or in this case inaction, by the State is a violation of the rules of discovery. However, equally important are the procedures in place to combat such a violation. All of these procedures require a defense objection when undisclosed evidence is introduced at trial. These procedures are in place so that the trial can be temporarily delayed so the opposing side may prepare to meet the evidence. An objection or motion for mistrial or continuance some several witnesses later and at the end of the State's case does not have the same effect. Where there is a timely objection, the lower court can properly cure the violation. The lower court was given no such opportunity here. Therefore, Barnes and Fleming are procedurally barred from raising this issue on appeal.

This assignment would likewise fail on the merits. Notwithstanding the State's inconceivable failure

of its continuing duty to supplement, Barnes and Fleming fail to show unfair surprise or undue prejudice by the State's failure. Their assertion -- failure to turn over Belton's statement closed out a possible line of defense -- is not realistic in view of other evidence. Belton lived in a trailer with his mother and her boyfriend, Jerry Martin. He testified that when the explosion happened, all of them looked out the window. Although the defense did not know prior to trial that Belton had seen someone jumping the fence, they had Belton's name as a witness for the State, and he was at one time subpoenaed as a witness for the defense. They also had information given to them as discovery long before trial that Jerry Martin saw someone jump the fence. If the defense had wanted to pursue the mysterious fence-jumper, they had ample chance to do so.

## CONCLUSION

The verdict of the jury and the ruling of the lower court are affirmed.

**AS TO FLEMING: COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER WITHOUT BENEFIT OF PAROLE OR PROBATION AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER WITHOUT BENEFIT OF PAROLE OR PROBATION AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO T HE SENTENCE IN COUNT I. COUNT III: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER WITHOUT BENEFIT OF PAROLE OR PROBATION AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO THE SENTENCES IN COUNT I AND COUNT II. COUNT IV: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER WITHOUT BENEFIT OF PAROLE OR PROBATION AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO THE SENTENCES IN COUNT I, COUNT II AND COUNT III. COUNT V: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT, AS AN HABITUAL OFFENDER WITHOUT BENEFIT OF PAROLE OR PROBATION AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO THE SENTENCES IN COUNT I, COUNT II, COUNT III AND COUNT IV.**

**AS TO BARNES: COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO THE SENTENCE IN COUNT I. COUNT III: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT AFFIRMED; SENTENCE TO RUN CONSECUTIVE TO THE SENTENCES IN COUNT I AND COUNT II. COUNT IV: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT AFFIRMED; SENTENCE TO RUN CONCURRENT WITH THE SENTENCES IN COUNT I, COUNT II AND COUNT III. COUNT V: CONVICTION OF CAPITAL MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT AFFIRMED; SENTENCE TO RUN CONCURRENT WITH THE SENTENCES IN COUNT I, COUNT II, COUNT III AND COUNT IV.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**