# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-KA-01250 COA

**CLARENCE DEAN**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:              11/01/96

TRIAL JUDGE:                   HON. BETTY W. SANDERS

COURT FROM WHICH APPEALED:     SUNFLOWER COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:        JOHNNIE E. WALLS, JR.

ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL

                               BY: CHARLES W. MARIS, JR.

DISTRICT ATTORNEY:             FRANK CARLTON

NATURE OF THE CASE:            CRIMINAL - FELONY

TRIAL COURT DISPOSITION:       MURDER: SENTENCED TO SERVE A TERM OF LIFE IN
                               THE CUSTODY OF THE MDOC; DEFENDANT IS
                               ORDERED TO PAY $443.20 COURT COSTS

DISPOSITION:                   AFFIRMED - 12/18/98

MOTION FOR REHEARING FILED:    1/14/99

CERTIORARI FILED:

MANDATE ISSUED:                4/14/99

BEFORE McMILLIN, P.J., DIAZ, AND PAYNE, JJ.

McMILLIN, P.J., FOR THE COURT:

¶1. Clarence Dean stands convicted of murder in the death of Cameron Pierre, who was bludgeoned to death with a tire tool. Dean has appealed his conviction raising two issues for appellate review in hopes of having his conviction reversed. First, he claims that the trial court improperly admitted gruesome photographs of the victim, the sole purpose being to inflame the passions of the jury. Second, he mounts an attack on the quality of the State's evidence of his guilt, claiming it was insufficient to sustain a conviction, or, in the alternative, that the guilty verdict was against the weight of the credible evidence. We find his contentions to be without merit and affirm the verdict of the jury.

# I.

## Facts

¶2. The State presented evidence that would tend to establish that Dean's cousin, Theodore Dean, enlisted him in a scheme to "take out" Pierre in settlement of some disagreement between them. In furtherance of that plan, there was evidence that the two lured Pierre into a car, ostensibly to drink and smoke marijuana. On a deserted stretch of road, the defendant, who was driving, reported that there was some problem with the car. After the defendant and Pierre had exited the car, Theodore Dean came out of the back seat with a pistol in his hand. Whatever his original purpose had been concerning the pistol, that purpose was thwarted when Pierre succeeded in wresting the pistol from Theodore Dean's control. Somehow, despite the fact that Pierre was now armed with a pistol and shooting at the defendant and his cousin, the defendant told the police he managed to unlock the car trunk, remove the tire tool, and strike Pierre a debilitating blow to the head. Theodore Dean, who had fled to avoid being shot then rejoined the defendant, who had re-entered the car, leaving Pierre lying inert in the road. The defendant, according to his account, urged Theodore Dean to join him in the car so that they could depart, but Theodore Dean obtained the same tire tool and used it to deliver multiple additional blows to Pierre's head. Theodore Dean claimed that he struck those additional blows because Pierre was still in control of the pistol and was apparently regaining movement after the incapacitating first blow delivered by the defendant. For reasons that are not particularly clear, the two cousins then removed Pierre's shoes and placed them in the car. They also drug his body out of the roadway, Theodore Dean testifying that they did so to avoid further injuring Pierre with the car as they drove away. The two subsequently attempted to dispose of the shoes, the tire tool, and the firearm by throwing them into a river as they neared the town of Moorhead.

# II.

## The First Issue: Admission of the Photographs

¶3. Dean claims that the photographs of the victim were particularly gruesome and served no evidentiary purpose since the defense was prepared to concede that Pierre died as the result of the blows administered to his head by the defendant and his cousin, Theodore Dean. Dean would have this Court conclude that the sole purpose for offering the photographs was to inflame the jury in order to obtain a conviction.

¶4. Questions regarding the admissibility of evidence are vested in the sound discretion of the trial court. *Gossett v. State,* 660 So. 2d 1285, 1292 (Miss. 1995). This wide discretion has been specifically found to extend to matters of photographs of homicide victims. *Brown v. State,* 682 So. 2d 340, 353 (Miss. 1996); *Koch v. State,* 506 So. 2d 269, 271 (Miss. 1987). The Mississippi Supreme Court has repeatedly declined to intercede when even the most grisly photographs were introduced so long as there was some arguable evidentiary purpose for their admission. *See, e.g. Williams v. State,* 544 So. 2d 782, 784-85 (Miss. 1987); *Cabello v. State,* 471 So. 2d 332, 341-42 (Miss. 1985); *Collins v. State,* 447 So. 2d 645, 646 (Miss. 1984).

¶5. In the case now before this Court, the photographs display quite graphically the gruesome means by which Pierre's life was ended. However, the defense was advancing the theory of self-defense and presented a witness who seemed to be testifying that the purpose of the blows was merely to incapacitate Pierre while the defendant and his cousin made good their escape from the range of Pierre's pistol.

Evidence is admissible which has "*any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable *or less probable* than it would be without the evidence." M.R.E. 401 (emphasis supplied). So long as Dean was intent on convincing the jury that the blows causing Pierre's death involved only necessary acts of self-defense, evidence of the severity with which Pierre was dispatched from this life would seem relevant to make Dean's theory of the case "less probable" in the eyes of the jury. Given the wide discretion granted the trial judge in such matters, we simply cannot say that this discretion was abused in this instance.

## III.

### The Second Issue: An Attack on the Weight and Sufficiency

### of the Evidence of Guilt

¶6. An attack on the sufficiency of the evidence suggests that, as to some critical element of the crime, the State's evidence is so lacking that a reasonable jury correctly applying the law to the evidence presented at trial could only find the defendant not guilty. *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993). When an appellate court is asked to reverse and render a conviction on this basis, the court is obligated to view all the evidence in the light most favorable to the verdict and must assume that the jury, as fact-finder, resolved all matters on which the evidence was in dispute in favor of the prosecution. *Id.* The appellate court may interfere only if it concludes that, based upon a review of the evidence in that light, the jury could not reasonably have returned a guilty verdict. With that standard in mind, we will consider the arguments advanced by Dean.

¶7. Dean attacks the sufficiency of the evidence on two fronts. First, he claims that the evidence is uncontroverted that any actions taken by him to injure Pierre were undertaken in necessary self-defense. Second, he urges alternatively that there is no legitimate dispute that he abandoned any previously-existing criminal intent prior to the time that his cousin, Theodore Dean, delivered the fatal blows to Pierre's head.

### A.

### Self-Defense

¶8. There was evidence in the record that, if believed by the jury, would tend to establish that the Dean cousins lured Pierre to the spot where they proceeded to brutally bludgeon him to death. There was evidence also to the effect that Theodore Dean had indicated to the defendant before the trip was undertaken that he needed to "take out" Pierre. Through the defendant's statement that was admitted into evidence, it was shown to the jury that Theodore had emerged from the back seat of the car armed with a pistol, which he apparently proceeded to lose in a struggle with Pierre before it could be put to its intended use. Only at that point did the two cousins begin to violently assault Pierre with the tire tool.

¶9. The defendant now argues that he only struck Pierre one blow, which he delivered in necessary defense of himself and his cousin, Theodore Dean. There is no clear explanation in the record as to how the defendant, after fleeing the vehicle in a hail of gunfire, was able to return, obtain the keys from the ignition, open the trunk, remove the tire tool, and deliver an incapacitating blow to Pierre's head when, all the while, Pierre was at the vehicle armed with the pistol and bent on shooting either or both of his erstwhile companions. If the jury believed that the Dean cousins had embarked on a scheme to "take out" Pierre, the fact that, during the course of accomplishing their intended purpose, things went awry so that they had to

resort to an alternate means to dispatch their victim does not raise a legitimate issue of self-defense. Even if the jury believed that Pierre wrestled the pistol from Theodore Dean at a time when Theodore Dean was intent on using it to kill Pierre and that Pierre turned the weapon on his assailants as a means of preserving his own well-being, the law is clear that this unexpected setback, which resulted in the Dean cousins being confronted by the weapon they had intended to use to accomplish their evil purpose, does not give rise to a right of self-defense on their part. *Layne v. State,* 542 So. 2d 237, 244 (Miss. 1989). "Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense." *Id.* Dean's right to a self-defense instruction -- a close question in itself -- arises out of some other interpretation of the evidence other than one that involves a would-be murderer defending himself from an unexpectedly aggressive intended victim.

¶10. The defendant's version of events is, at best, somewhat incredible. It is contradicted in critical areas by the physical evidence. It leaves much of what happened unexplained in a situation where, in the absence of any explanation, the story sounds improbable on its face. To say that the jury was required, as a matter of law, to conclude that the acts leading to the death of Pierre were undertaken in response to an imminent unprovoked attack from Pierre is a proposition this Court is not prepared to accept. The resolution of disputed facts is a matter traditionally left the jury acting as finders of fact. *Groseclose v. State,* 440 So. 2d 297, 300 (Miss. 1983). Whether Dean was acting in necessary self-defense was just such a question of fact. The jury was instructed on the issue of self-defense and the matter was submitted to it for resolution. It resolved the question against Dean and there is no basis for this Court to interfere with that decision.

### B.

### Abandonment of Criminal Involvement

¶11. Alternatively, Dean argues that Theodore Dean's unrebutted testimony that the defendant urged him to get into the car at a time when Pierre was still alive proved that, as a matter of law, the defendant had abandoned any participation in the events that caused Pierre's demise. He points out that Theodore Dean's testimony is unrebutted that it was only after the defendant urged him to get into the car that Theodore Dean took the tire tool and administered additional blows to Pierre. Because the defendant was urging his cousin to join him in the car rather than to continue the assault on Pierre, the defendant would have us hold that he has no criminal culpability in those final, fatal, blows administered by his cousin.

¶12. The only authority cited in support of this argument relates to a defense of abandonment when the defendant is on trial for attempt in an unconsummated crime. *See, e.g., Pruitt v. State,* 528 So. 2d 828, 831 (Miss. 1988). In this case, the crime was actually accomplished and we find the authority cited by the defendant to be inapplicable to the situation we face.

¶13. When two or more people combine through their joint efforts to commit a criminal act, each is equally guilty as a principal even though one or more of the critical acts constituting the crime may have been performed by the other. *Price v. State,* 362 So. 2d 204, 205 (Miss. 1978). In this case, the jury could have reasonably concluded, based on the evidence, that the defendant and his cousin were embarked on a scheme or plan to kill Pierre. Once that plan was put into operation, it appears a highly doubtful proposition that one of the participants in the scheme could unilaterally abandon his role in mid-occurrence -- whether because of repentance of any criminal intent or because of lost nerve -- and escape criminal liability although the plan, through the continued efforts of another participant, inexorably proceeded to completion.

¶14. In any event, there is undisputed evidence in the record that the defendant participated in moving Pierre's battered body to the side of the road and assisted in the attempt to conceal the murder weapon, the gun, and the victim's shoes -- events which occurred after the request that Theodore Dean rejoin the defendant in the car. While the defendant may have been entitled to try to convince the jury that he had abandoned any previously-held intent to kill Pierre before Pierre received the lethal blows administered by Theodore Dean, we are convinced that there was sufficient evidence before the jury from which it could conclude that the defendant's urging his cousin to get back in the car evidenced something other than an abandonment of participation in the criminal enterprise that resulted in Pierre's death.

## C.

## The "Weathersby" Rule

¶15. Under a separate section of his brief, Dean urges that he is entitled to have his conviction reversed under the rule announced in *Weathersby v. State,* 165 Miss. 207, 209, 147 So. 481, 482 (1933). He bases this argument on the notion that the version of events related by both him and his cousin is entirely consistent with the conclusion that Dean was acting in necessary self-defense when he struck Pierre and that, under the *Weathersby* Rule, the jury was bound to accept this version of events as true.

¶16. The rule announced in the *Weathersby* case is essentially to the effect that, where the defendant or the defendant's witnesses are the only eyewitnesses, their version of events must be accepted as true unless substantially contradicted by, among other things, the physical facts or by facts of common knowledge. *Id.* at 482.

¶17. We do not find the *Weathersby* case to have any application in this instance. First of all, the physical evidence, including the very brutality with which Pierre was killed, could reasonably be interpreted as contradicting the version of events related by the Dean cousins, who claimed to be using only that force necessary to incapacitate Pierre and thereby end his attempts to shoot them. Secondly, the act of purposely abandoning Pierre in an unconscious state by the side of the road and then disposing of the device used to kill him together with his shoes could reasonably be interpreted as being logically inconsistent with acts of self-defense. Finally, Dean's version of events as related in his statement could be viewed by the jury as unreasonable on its face for its inability to explain how he was able to avoid an armed and clearly agitated Pierre while he (the defendant) retrieved his keys, unlocked the trunk, removed the tire tool, and approached Pierre sufficiently close to strike him a debilitating blow to the head.

¶18. Dean was offered the chance to present whatever evidence he desired in support of his version of the events. That he chose to leave the jury with only a sketchy, improbable, and largely self-serving description of the killing derived largely from his own pre-trial statements was his own decision. He was entitled to have that version of events submitted to the jury and this, in fact, occurred. He was not, however, in our opinion, entitled to the benefit of the *Weathersby* Rule that would have required the jury to accept as true his version of the events.

## D.

## Weight of the Evidence

¶19. The defendant makes no particular distinction in his brief between his attacks on the sufficiency of the evidence and his claim that the verdict was against the weight of the evidence. A defendant who asserts that

he is entitled to have his conviction reversed because the verdict is against the weight of the evidence must convince the appellate court that, even viewing all the evidence in the light most consistent with the verdict, a manifest injustice has occurred. *Collier v. State,* 711 So. 2d 458 (¶2) (Miss. 1998). We have discussed the evidence of guilt in some depth. The counterbalancing evidence consistent with the defendant's innocence consisted of a self-serving version of events that, on its face, seemed unlikely. We decline to find, on this record, that the jury's verdict was against the weight of the evidence and we deny the defendant any relief on this issue.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**